In re The METAL CENTER,
INC., Debtor.

PLESSEY PRECISION METALS,
INC., Plaintiff,

v.

The METAL CENTER, INC. and William
J. Gardner, Defendants.

Bankruptcy No. 5–82–01005.
Adv. No. 5–82–0471.

United States Bankruptcy Court,
D. Connecticut.

July 12, 1983.

Maureen Daheny Cox, Carmody & Torrance, Waterbury, Conn., for plaintiff.

Louise C. LaMontagne, Greenfield, Krick & Jacobs, P.C., New Haven, Conn., for defendant, The Metal Center, Inc.

David L. Belt, Jacobs, Grudberg & Belt, P.C., New Haven, Conn., for defendant, William J. Gardner.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND

### 28 U.S.C. § 1478

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

### BACKGROUND

This matter is before the court on the plaintiff's Objection To Application For Removal/Motion For Remand.[1]

On June 21, 1982, the plaintiff, Plessey Precision Metals, Inc. (Plessey) instituted suit in the Superior Court of the State of Connecticut for the Judicial District of New Haven against the debtor and William J. Gardner (Gardner). In essence Plessey claimed that it sold and delivered goods to the debtor on an open account, that despite demand for payment of the amount due, the debtor failed to make complete payment, leaving a balance due and owing of $18,639.20 plus interest, and that Gardner absolutely guaranteed payment of all indebtedness incurred by the debtor.

On August 31, 1982, the debtor filed a voluntary petition, seeking relief under Chapter 11 of the Bankruptcy Reform Act of 1978. On October 13, 1982, the debtor filed a verified application for removal of the superior court action to the bankruptcy court, to which, as noted, Plessey objected and alternatively moved, pursuant to 28 U.S.C. § 1478(b), that its claim against Gardner be remanded to the superior court. On or about October 13, 1982, the debtor objected to Plessey's claim.[2]

### II.

### DISCUSSION

### A.

#### Removal/Remand

Plessey contends that the bankruptcy court lacks jurisdiction over its claim against Gardner, a nondebtor. In the alternative, Plessey argues that even if this court has jurisdiction over its claim against Gardner, principles of equity militate against the exercise of such jurisdiction.

The debtor, on the other hand, contends that this court does have jurisdiction. The debtor further argues that it is the indemnitor of Gardner and is bound by any judgment Plessey obtains against Gardner and that therefore severing the claim so that Plessey can proceed in state court against Gardner would indirectly affect the debtor's estate.

### 1.

#### Jurisdiction

One of the principal elements of the Bankruptcy Reform Act of 1978 was the congressional grant of pervasive jurisdiction to bankruptcy courts. Recognizing that debtors and creditors were entitled to a unified, inexpensive and efficient system of justice to resolve their controversies and determine their rights and obligations[3], Congress extended the jurisdiction of the bankruptcy court to all civil proceedings

---

**1.** 28 U.S.C. § 1478, which governs removal to the bankruptcy court, provides

(a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

**2.** Plessey's Memorandum, filed November 18, 1982, p. 3.

**3.** See H.R.Rep. No. 595, 95th Cong., 2d Sess. 446 (1977), reprinted in [1978] U.S.Code Cong. & Admin.News 5787, 6401; S.Rep. No. 989, 95th Cong.2d Sess. 153 (1978), reprinted in [1978] U.S.Code Cong. & Admin.News 5787, 5939–5940.

arising under Title 11 or arising in or *related to* cases under Title 11.[4]

■ Although the scope of the jurisdiction conferred by the words "related to" found in 28 U.S.C. § 1471 has been subject to various interpretations, *see generally, In re General Oil Distributors, Inc.*, 21 B.R. 888, 9 B.C.D. 392, 394–95 n. 13 (Bkrtcy.E.D. N.Y.1982), numerous bankruptcy courts have found jurisdiction where, as here, a nondebtor has sued a debtor's guarantor. *See In re Bretano's Inc.*, 27 B.R. 90, 10 B.C.D. 157 (Bkrtcy.S.D.N.Y.1983); *In re Maine Marine Midland Corporation*, 20 B.R. 426 (Bkrtcy.D.Me.1982); *In re Brothers Coal Co., Inc.*, 6 B.R. 567, 6 B.C.D. 1066 (Bkrtcy.W.D.Va.1980); *In re Johnie T. Patton, Inc.*, 12 B.R. 470 (Bkrtcy.D.Nev.1981); *In re Greeman Motors, Inc.*, 22 B.R. 1 (Bkrtcy.D.N.M.1982); *In re Hartley*, 16 B.R. 777 (Bkrtcy.N.D.Ohio 1982). I find this line of cases persuasive and accordingly conclude that the cause of action against Gardner is "related to" the above captioned bankruptcy case within the meaning of 28 U.S.C. § 1471.

The broad reach of 28 U.S.C. § 1471 is not, of course, dispositive of the jurisdictional issue here because the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) decided that the grant of power to bankruptcy judges under section 241(a) of Public Law 95–598 was unconstitutional. The effect of that decision was stayed until December 24, 1982, and the jurisdiction of this court is now founded upon the Emergency Resolution For Administration Of Bankruptcy System (Emergency Rule) adopted by the United States District Court for the District of Connecticut, effective December 25, 1982. *See In the Matter of Braniff Airways, Inc.*, 700 F.2d 214 (5th Cir.), *aff'g*, 27

B.R. 231 (N.D.Tex.1983); *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254 (6th Cir.1983); *In the Matter of Hansen*, 702 F.2d 728 (8th Cir.1983); *In re Q1 Corp.*, 28 B.R. 647, 10 B.C.D. 522 (E.D.N.Y.1983); *Moody v. Martin*, 27 B.R. 991, 10 B.C.D. 575 (W.D.Wis.1983); *In re Northland Point Partners*, 26 B.R. 1019 (E.D.Mich.1983); *In re Color Craft Press, Ltd.*, 27 B.R. 962, 10 B.C.D. 182 (D.Utah 1983) (all of which uphold the validity of similar or identical rules). *Contra In the Matter of Seven Springs Apartments*, 10 B.C.D. 634 (Bkrtcy. N.D.Ga.1983) (providing a comprehensive analysis of problems related to the rule).

While the underpinnings of the Emergency Rule are subject to divergent opinion, the consensus of the circuit courts which have reviewed the rule appears to be that 28 U.S.C. § 1471 was not completely rejected, leaving the district court with jurisdiction, *inter alia*, to refer matters to bankruptcy judges. *In re Hansen, supra; In re Braniff Airways, Inc., supra;* White Motor Corp. v. Citibank, N.A., supra.

Paragraph (c)(1) of the Emergency Rule, which tracks 28 U.S.C. § 1471, provides:

(c) Reference to Bankruptcy Judges

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the Bankruptcy Judges of this district.

In all civil proceedings thus referred, a bankruptcy judge may enter final orders and judgments except in related proceedings where the parties have not consented to such entry. Emergency Rule ¶¶ (d)(2), (d)(3)(B).

"Related proceedings" are defined, for purposes of determining when a bankruptcy judge may enter a dispositive order, as

---

**4.** 28 U.S.C. § 1471. Jurisdiction.

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the

district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

"those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a District Court or a State Court." The instant adversary proceeding is a related proceeding as defined in ¶ (d)(3)(A) of the Emergency Rule. Since, however, the parties have consented, a dispositive order may be entered here. Emergency Rule ¶ (d)(3)(B).

One final preliminary issue remains, namely, whether civil proceedings, otherwise within the scope of a bankruptcy court's jurisdiction under the Emergency Rule, may be removed to that bankruptcy court. This question arises from the broad language found in the *Marathon* plurality opinion that held section 241(a) of the Bankruptcy Reform Act unconstitutional.[5] Section 241(a) not only granted bankruptcy courts broad, albeit unconstitutional, jurisdiction, but also provided the removal provisions found at 28 U.S.C. § 1478. Consequently, it might be argued that the bankruptcy court cannot entertain removed proceedings.

█ The post *Marathon* decisions, which hold that 28 U.S.C. § 1471 was not invalidated in its entirety, apply *a fortiori* in support of the continued vitality of 28 U.S.C. § 1478. As noted by the district court in *In re Braniff Airways, Inc., supra,* 27 B.R. at 233 n. 2, "[t]he Supreme Court decision in *Marathon* addresses only the jurisdictional grants of § 1471, which is included in § 241(a)." Because the removal provisions carry no constitutional infirmities independent of those connected with 28 U.S.C. § 1471, which have been temporarily alleviated by the Emergency Rule, I conclude that 28 U.S.C. § 1478 remains in force. Just as proceedings are now commenced in the bankruptcy court and then "referred" there by the district court, Emergency Rule, ¶¶ (b), (c)(1), so too proceedings may be removed to the bankruptcy court in the context of the referral by the district court.

## 2.
### *Automatic Stay and Equitable Considerations*

Having concluded that this court has jurisdiction and may enter a dispositive order, I now turn to the substance of the issue presented. The options presented by the parties are sever and remand Plessey's claim against Gardner, so that Plessey may continue with its state court action against Gardner or retain the entire proceeding in this court, so that the rights and obligations of all parties can be litigated together. An analysis of these options necessarily requires a consideration of the effect upon the debtor of a state court judgment against Gardner, the applicability of the automatic stay (11 U.S.C. § 362(a))[6] upon a

---

5. The plurality stated
   We conclude that § 241(a) of the Bankruptcy Act of 1978 has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress' power to create adjuncts to Art. III courts.
   102 S.Ct. at 2879–80.

6. 11 U.S.C. § 362(a) provides:
   Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—
      (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose

before the commencement of the case under this title;
   (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
   (3) any act to obtain possession of property of the estate or of property from the estate;
   (4) any act to create, perfect, or enforce any lien against property of the estate;
   (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
   (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
   (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

nondebtor-guarantor, judicial economy and general principles of equity.

Here Plessey argues that his right to pursue his claim against Gardner should not be impeded by the administration of the debtor's estate. Indeed, the very reason Plessey obtained Gardner's guarantee was to insure full payment in the event the debtor could not or did not pay its debt to Plessey. So Plessey urges this court to sever and remand its claim against Gardner and that result might be appropriate unless any judgment against Gardner would be binding upon the debtor. Under those circumstances, the automatic stay provided by 11 U.S.C. § 362(a) must be considered as a potential obstacle to such litigation.

■ Generally, the automatic stay does not apply to proceedings against nondebtors. *See In re Dino Smith,* 14 B.R. 956, 957–958, 8 B.C.D. 417 (Bkrtcy.D.Conn.1981). As pointed out by Chief Judge Peckham in *In re Related Asbestos Cases,* 23 B.R. 523, 527 (N.D.Ca.1982): "The plain language of section 362, *supra,* clearly and repeatedly refers to actions against the debtor; it nowhere purports to encompass other related interparty claims." This interpretation finds overwhelming support in the case law. *Id.* at 529. Thus, in situations where a codefendant is independently liable as, for example, where the debtor and another are joint tort feasors or where the nondebtor's liability rests upon his own breach of a duty, then the protection afforded a debtor under the automatic stay would clearly not extend to such nondebtor. Where, however, a debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code.

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It

(8) the commencement or continuation of a proceeding before the United States Tax

stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy."

S.Rep. No. 95–989, 95th Cong., 2d Sess. 54–55 (1978), *reprinted in* [1978] U.S.Code Cong. & Admin.News 5787, 5840–5841. As noted, Chief Judge Peckham specified that Code section 362 does not protect related but *independent* codefendants. Clearly, the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate. Of course, the stay under those circumstances would be subject to the relief provisions of Code section 362(d), but initially the debtor is entitled to such extended protection.

■ Under nonbankruptcy law, it is well settled that a guarantor who pays the debt of his principal has a cause of action against the principal for reimbursement. *Howell v. Commissioner of Internal Revenue Service,* 69 F.2d 447, 450 (8th Cir.), *cert. denied,* 292 U.S. 654, 54 S.Ct. 864, 78 L.Ed. 1503 (1934); *Scott v. Norton Hardware Co.,* 54 F.2d 1047, 1050 (4th Cir.1932). While it might be argued that voluntary payment by a guarantor does not bind the principal debtor where the principal debtor has objected to the underlying debt, the result is different where the creditor obtains a judgment against the guarantor. Under those circumstances, the issue of the validity of the underlying debt must be litigated and established before the imposition of such liability, and would have a binding effect upon the principal debtor in a claim over by the guarantor. As stated generally in 46 Am. Jur.2d *Judgments* § 551 at 713–714 (1969):

A judgment may be conclusive as against a third person who is liable over to the judgment debtor with respect to the cause of action adjudicated, at least where there has been notice to the third person and an opportunity to defend.

Court concerning the debtor.

This is true, in the absence of fraud or collusion, whether the third person is liable over by express contract or by operation of law, *and whether the third person actually appears in the first action or not.* [Emphasis added.]

The Fourth Circuit Court of Appeals in *Jennings v. United States,* 374 F.2d 983, 985–86 (1976) explained the basis for the conclusive effect of the judgment as follows:

> The concept that notice plus an opportunity to defend render binding on an indemnitor the judgment in a case in which he did not participate springs from notions of res judicata. The reasoning is that where an indemnitor is notified and can take part in—indeed may control—the litigation, he is precluded from contesting the indemnitee's liability in the subsequent indemnity action. The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court.

*See also Thomas v. Ferriss,* 113 Conn. 539, 155 A. 829 (1931) (applying principle of vouching in).

The question then is whether bankruptcy law alters this result. Following the logic that the automatic stay is intended to bar litigation against the debtor and the debtor's estate to collect prepetition debts, and armed with the assumption that the law would not permit an indirect result which was expressly barred, a debtor, on notice of an action by his creditor against his guarantor, might justifiably decline to join that litigation on the basis that the automatic stay must be read to protect him and his estate from being drawn into litigation or from being bound by the results thereof. Since he cannot be compelled to appear in nonbankruptcy court to defend his creditor's or guarantor's claim, absent relief from the automatic stay, principles of law, which might otherwise bind the debtor, are of no effect in a bankruptcy context.

 Accordingly, I conclude that the debtor would not be bound by any judgment Plessey might obtain against Gardner in state court, and consequently, Gardner is not protected by the automatic stay. Therefore those concerns are not a basis for denying Plessey's motion to sever and remand. However, that conclusion is not dispositive of the issues here, as 28 U.S.C. § 1478(b) requires an analysis of equitable considerations.

It should first be observed that I am not persuaded by Plessey's assertion that remand is supported by equitable grounds. On the contrary, severing and remanding Plessey's claim against Gardner potentially exposes Gardner to inconsistent judgments. *See* 11 U.S.C. § 502(e)(1)(A).[7]

Furthermore, this is not a proceeding where trial of the matter removed was imminent in the state court, *In re Mansen,* 20 B.R. 391, 9 B.C.D. 130, 131 (Bkrtcy.D.Mass. 1982), or where an unsettled question of state law is at issue, *In re Wild Oats Utilities, Inc.,* 18 B.R. 959, 8 B.C.D. 1259 (Bkrtcy. S.D.N.Y.1982). Here the interests of equity and judicial economy dictate that the issues between the debtor, Plessey and Gardner be litigated in the same forum.

### III.

Accordingly, it is ORDERED that Plessey's motion be, and hereby is, denied.

---

**7.** 11 U.S.C. § 502 provides in pertinent part:
(e)(1) The court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—

(A) such creditor's claim against the estate is disallowed;