In re KANAWHA TRACE DEVELOP-
MENT PARTNERS, A Virginia
Limited Partnership, Debtor.

FIRST NATIONAL BANK OF LOUIS-
VILLE, A National Banking
Association, Plaintiff,

v.

KANAWHA TRACE DEVELOPMENT
PARTNERS, A Virginia Limited
Partnership, Defendant.

KANAWHA TRACE DEVELOPMENT
PARTNERS, A Virginia Limited Part-
nership, and John L. Thornton, Plain-
tiffs,

v.

FIRST NATIONAL BANK OF
LOUISVILLE, Defendant.

Bankruptcy No. 88–00983–RS.
Adv. Nos. 88–0200–RS, 88–0253–RS.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 29, 1988.

Leonard E. Starr, III, Sandston, Va., for Kanawha Trace Development.

John C. Moore, Richmond, Va., for First Nat. Bank of Louisville.

Kenneth F. Hardt, Richmond, Va., for John L. Thornton.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court upon a request made by the parties for a consolidated hearing on the above-styled matters. Accordingly, the Court has before it 1) the motion of First National Bank of Louisville ("First National" or "the bank") requesting relief from the stay imposed under 11 U.S. C. § 362 upon the filing of a bankruptcy petition by the debtor herein, Kanawha Trace Development Partners, a Virginia Limited Partnership ("the debtor" or "Ka-

nawha Trace"), so that it may foreclose on property held as security for a note made by the debtor, and 2) the complaint of the debtor requesting that First National be enjoined from prosecuting a suit in the United States District Court, filed for the purpose of enforcing its guaranty agreement against John L. Thornton ("Thornton"), a guarantor on the Kanawha Trace note. At a hearing on these matters, Thornton's request to intervene as a plaintiff in the debtor's complaint for an injunction was granted. After considering the evidence presented at the hearing and after reviewing the briefs filed by counsel, this Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On May 3, 1988, the debtor filed a Chapter 11 petition in bankruptcy. The petition was filed one day prior to the scheduled May 4, 1988 foreclosure by First National on its first deed of trust secured by the debtor's 21½ acre townhouse development project ("the project" or "the property"). The foreclosure on the property was not scheduled until several months of significant negotiating had occurred between representatives of the debtor and First National.

At the time of the filing of this petition, the amount owed First National under its note and deed of trust, as stipulated, equaled $4,032,863.51, $3,759,215.63 representing principal and $273,647.88 representing accrued interest through May 3, 1988. Interest has been accruing since the filing at the approximate rate of $1,000 per day. Dr. John L. Thornton ("Thornton") and Jeffrey Jorgen Rawn ("Rawn") are guarantors of the debt.

Rawn and Park Sussex Development Corp. ("Park–Sussex") are the general partners of Kanawha Trace. Thornton, though not a general partner himself, has a 50 percent interest in Park–Sussex and is also one of approximately 30 limited partners. It is alleged that because of the poor financial condition of Park–Sussex and Rawn, Thornton represents the only short term source of funding available to the Kanawha Trace project until permanent refinancing is obtained. As a result, Thornton's involvement in the project is essential if the reorganization is to be successful.

The Kanawha Trace development project is located along the banks of the James River in the City of Richmond, Virginia. The project as originally planned called for the construction of 86 townhouse units for which current zoning is already in place. Of the 86 contemplated units, 14 units have been completed and sold, 4 units have been completed but are not sold, another 3 units are approximately 90 percent complete and 6 units are between 40 to 75 percent complete. Since September 1987, construction has ceased on the project.

An appraisal submitted as evidence by the bank indicates that the current value of the debtor's property is $2,911,000.00. This appraisal reflects the increased value of the property that is realized by the addition of the 13 unsold townhouses in finished condition less the $430,000.00 cost of completing the partially built units. As stated in open court, this Court finds that First National's appraisal represents a realistic valuation of the debtor's property. Accordingly, a finding is made that the debtor holds no equity in the Kanawha Trace development.

During the hearing, several questions were raised concerning whether the bank's security interest in the property was being adequately protected. The parties stipulated prior to the hearing that the debtor owed $29,169.54 in 1987 property taxes and as of June 15 would owe $40,757.67 in 1988 property taxes. Taxes are accruing on the property at the rate of approximately $3,400.00 a month. Insurance premiums are also being incurred at the rate of approximately $1,500.00 per month and ground erosion occurring around the property will require an estimated $8,000.00 to remedy. In addition, several of the unfinished units are open to the weather and are apparently deteriorating. The alleged cost of "closing up" these units range from $24,000.00, proposed by the debtor, to $52,058.00, proposed by First National.

In addressing the adequate protection concerns raised by First National, the debtor has agreed to make cash payments of $5,000.00 each month, starting from the filing of the petition. The $5,000.00 cash payments are to be applied to the accrual of real estate taxes of approximately $3,400.00 each month and to the accrual of insurance premiums of approximately $1,500.00 a month. The debtor has also agreed to pay the cost of "closing up" the existing unfinished townhouse units so that the property does not deteriorate. By taking these protective measures, and contingent on the debtor agreeing to pay the $8,000.00 needed to prevent further erosion of the development property, as well as, the debtor agreeing to pay any additional expenses that threaten the value of First National's security interest, this Court finds that the bank is adequately protected from depreciation of its collateral.

## CONCLUSIONS OF LAW

### I. Motion for Relief From Stay—11 U.S.C. § 362

First National has requested that relief from stay be granted pursuant to § 362(d)(1) and (2) of the Bankruptcy Code. Section 362(d) states that:

> [o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(g) states that the moving party has the burden of proving the lack of equity in property while the party opposing relief from stay has the burden on all other issues.

In first addressing the question of whether relief from stay should be granted in this matter under § 362(d)(2), the Court must address the issues of whether the debtor has equity in the Kanawha Trace property and whether the Kanawha Trace property is necessary to an effective reorganization. As previously stated, this Court has already ruled that the debtor does not have equity in the Kanawha Trace property. In addition, since the Kanawha Trace property constitutes the single major asset of this bankruptcy case, it cannot be disputed that the property is essential for a reorganization. Accordingly, the determining issue that must be resolved concerns whether the requirement of an "effective" reorganization has been met.

The requirement of an "effective reorganization" has recently been defined by the United States Supreme Court to mean "that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *United Savings Ass'n. v. Timbers of Inwood Forest,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), quoting *United States Ass'n. v. Timbers of Inwood Forest,* 808 F.2d 363 (5th Cir.1987). The Supreme Court also noted in *Timbers* that deference should be given to a debtor during the four month exclusivity period for filing a plan and a less detailed showing that there is a reasonable possibility of an effective reorganization should be required unless there is "no realistic prospect of an effective reorganization." *Timbers,* 108 S.Ct. at 632–33.

In the matter currently before the Court, the debtor has outlined a series of steps that are necessary for a reorganization of the Kanawha Trace development. These steps include:

1) the selection of Douglas Woolfolk as a new developer, which has already occurred;

2) the selection of a new architect for the project, and the preparation of sketches noting any design changes or modifications that may be necessary;

3) the approval of the City Planning commission for a zoning change that allows for an increase in the density of the project from 86 units to approximately 140;

4) preparation by the architect of working drawings to be used in the construction of the project;

5) the obtaining of new or additional financing;

6) the bidding of the project out to subcontractors by the general contractor at which time the final feasibility based on an assessment of costs of completion verses market demand can be made;

7) actual construction.

In reviewing the steps outlined by the debtor, the Court notes that satisfaction of some of the measures may present challenges. In particular the Court realizes that the rezoning of the project to increase the density, as well as the obtaining of new or additional financing, may prove difficult. However, in light of the testimony of Douglas Woolfolk, who stated that although financing would not be easily obtained, it should be available from a source, and considering the lack of opposition to the initial development plan after concessions were made by the debtor, this Court cannot find that there is not a reasonable possibility that the debtor will successfully reorganize. Accordingly, it must be determined whether such reorganization could be conducted in a reasonable time.

The debtor in outlining the reorganization of the Kanawha Trace project estimated that approximately 270 days would be needed before construction could proceed. The debtor asserts that the 270 day period is necessary to do such things as select an architect (15 days), prepare drawings for a rezoning presentation to the City Planning Commission (45 days), allow for a review of the Planning Commission (120 days), prepare working drawings (60 days), and bid on the project from subcontractors (30 days). The debtor also asserts that the time period could be shortened by overlapping the work on such measures as the obtaining of rezoning and the development of "working drawings."

In reviewing the periods of time presented by the debtor herein, 270 days does not appear to be unreasonable since similar time requirements would be necessary in any project of this size and scope. Therefore, this Court finds that the period of 270 days is not an unreasonable amount of time to allow this reorganization to proceed and accordingly, this Court denies First National's request for relief from stay under § 362(d)(2).

In next addressing the question of whether relief from stay should be granted First National under § 362(d)(1) of the Bankruptcy Code, an examination must be made concerning the adequate protection of the bank's security interest, as well as, whether any additional "cause" exists for granting relief. With regard to the question of adequate protection, this Court has previously made the finding that First National's security interest is not being threatened.[1] This finding, however, is based on the debtor's assertion that it will "close up" the townhouse units open to the weather and that it will make all tax and insurance premium payments as they accrue starting from the date of the filing of this petition. A finding of adequate protection is also contingent on the debtor agreeing to correct any existing erosion problems, as well as, pay any additional expenses that threaten the security of the bank's collateral.

In asserting that additional "cause" exists for granting relief from stay, First National alleges that the debtor filed its bankruptcy petition in bad faith "solely" to

---

1. This Court is cognizant of the prior debate between the Circuits of the United States Court of Appeals over the issue of compensating an undersecured creditor for their "lost opportunity cost." However, this debate has been resolved by the United States Supreme Court in *United Savings Ass'n. v. Timbers of Inwood Forest,* —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The court in *Timbers* held that an undersecured creditor was not entitled to post-petition interest on a note during the pendency of an automatic stay in order to be considered adequately protected. Consequently, the debtor's failure to provide First National with interest payments for the duration of the automatic stay does not prevent a finding of adequate protection.

obstruct the bank's foreclosure.[2] As evidence of the debtor's "obstructive conduct," First National cites the fact that the debtor has no chance of reorganization. Cases that allow relief from stay on the basis of a bad faith filing similarly apply the criterion of whether reorganization appears possible or whether instead bankruptcy was only filed as an attempt to forestall the loss of property. *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1968). In light of this Court's previous finding, however, that 1) the foreclosure action was commenced only after the termination of protracted negotiations and that 2) there is a reasonable possibility of a successful reorganization within a reasonable time, sufficient evidence cannot be found that the debtor filed its petition in bad faith. Accordingly, the debtor's request for relief from stay under § 362(d)(1) must also be denied.

## II. Complaint for Injunctive Relief

■ In an effort to prevent First National from enforcing its guaranty agreement, the debtor has filed a complaint requesting this Court stay the bank's suit filed against Thornton in the United States District Court. The debtor has additionally requested that the bank be enjoined from proceeding with its litigation.

A review of the case law regarding the debtor's request finds that the United States Court of Appeals for the Fourth Circuit in *A.H. Robins Company, Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986) has clearly addressed the issue of extending a bankruptcy stay to non-debtors. In *Piccinin*, the court noted that although the stay imposed under § 362(a)(1) of the Bankruptcy Code generally only applies to a debtor in bankruptcy, " 'there are cases [under 362(a)(1)] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants.' " *Id.* at 999, quoting *Royal Trucks and Trailer v. Armadora Maritima Salvadorena, S.A.*, 10 B.R. 488, 491 (N.D.Ill.1981). The court

pointed out that such cases only arise under "unusual circumstances" such as:

> when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

*Piccinin*, 788 F.2d at 999.

In the matter presently before the Court, a fact pattern exists that is markedly similar to that discussed in *Piccinin*. As a guarantor on the debtor's note, Thornton received a right to indemnification for any sums he became libel for as a result of his position as guarantor. This dual status of indemnitee and guarantor parallels the facts of *In re Metal Center*, 31 B.R. 458 (Bkrtcy.D.Conn.1983), a case cited by the *Piccinin* court as an example of when an extension of the bankruptcy stay is appropriate. *Piccinin*, 788 F.2d at 999–1000.

In *Metal Center* the third-party plaintiff had been sued on his guaranty of the debtor's obligation. The third-party was entitled to be indemnified by the debtor on account of any judgment rendered against him because of his guaranty. While the action was pending, the debtor filed a Chapter 11 petition.

In addressing the appropriateness of extending the automatic stay provision of § 362(a)(1) to a third-party, the *Metal Center* court noted that under general guaranty law a judgment against a guarantor may have a conclusive and binding effect on the guarantor's right to indemnity against the principal debtor. *In re Metal Center*, 31 B.R. at 462–63. Although the *Metal Cen-*

---

**2.** Although similar arguments may be made, it should be noted that the issue of whether the debtor filed its bankruptcy petition in bad faith for purposes of granting relief from stay under

§ 362(d)(1) is separate and distinct from the requirement of a good faith filing of a plan under § 1129(a)(3).

*ter* court determined that § 362(a)(1) did not apply to the creditor's suit against the guarantor, the court held instead that a stay was appropriate under the court's general equitable powers. *Id.* at 463.

The Fourth Circuit in *Piccinin* reviewed the *Metal Center* court's decision and concluded that the stay should have been granted under § 362(a)(1). The court stated:

> [i]t is true that, although the third-party defendant in *Metal Center* was found to be entitled to indemnity from the debtor, the court held that the situation was not such as to qualify for a stay under section 362(a)(1). The court reached this conclusion because in its opinion the judgment in the suit against the third-party would not be binding on the bankruptcy court. Of course, if the indemnitee, who has suffered a judgment for which he is entitled to be absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated claim the actual amount of the judgment he has secured but must submit his claim for allowance in the bankruptcy proceeding with the prospect that his claim may not be allowed in the full amount of the judgment awarded in favor of him, the indemnitee will be unfairly mulcted by inconsistent judgments and his contract of indemnity in effect nullified. We do not accept such reasoning with its shocking result and would find a stay under (a)(1) acceptable.... While, as we have said, it seems that a ruling sustaining the stay in that case under section 362(a)(1) would have been more logical and appropriate, it is unimportant whether the stay is granted under section 362(a)(1) or on equitable grounds: the result is the same; a stay is proper in such a situation.

*Piccinin,* 788 F.2d at 999–1000.

As a result of the Fourth Circuit's *Piccinin* decision, this Court must find that a stay should be applied to First National's suit in the United States District Court

against Thornton.[3] As a condition of this stay, this Court finds it appropriate to require Thornton to file an answer to the district court suit so that First National may be apprised of any defenses that may be raised regarding its guaranty. As a further condition of the stay, Thornton must keep the Court and First National apprised of any sales, transfers or encumbrances of assets with a value of $10,000 or more.

An appropriate Order will issue.

---

**3.** Because a stay of the district court proceeding prevents enforcement of First National's guaranty agreement, the issue of whether a preliminary injunction that would prohibit the bank from proceeding with its litigation need not be addressed.