Michael H. HOLLAND, Marty D. Hudson, A. Frank Dunham and Elliot A. Segal, as Trustees of the United Mine Workers of America 1992 Benefit Plan, Plaintiffs

v.

HIGH POWER ENERGY, Pratt Mining Co., and Geupel Construction Co., Inc., Defendants

No. CIV. A. 2:97–1092.

United States District Court, S.D. West Virginia, at Charleston.

April 13, 2000.

---

Larry D. Newsome, Barbara E. Locklin, David W. Allen, Jennifer Ruiz, Umwa Health & Retirement Funds, Office of the General Counsel, Washington, DC, Gary A. Collias, McIntyre & Collias, Charleston, for Plaintiffs.

Charles L. Woody, Paula Durst Gillis, Kevin L. Carr, Spilman, Thomas & Battle, Charleston, for Defendants.

### MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is pending before the court on the motion of defendant, Pratt Mining Company, to stay proceedings in the above-styled civil action, filed April 12, 1999.

### I.

On December 5, 1984, Pratt Mining Company ("Pratt") and Geupel Construction Company, Inc. ("Geupel") formed a joint venture known as High Power Energy ("High Power"), for the purpose of performing and completing a contract with Bethlehem Mines Corporation for the mining of certain coal reserves in Nicholas County, West Virginia. Geupel held a 75% ownership interest in High Power, while Pratt owned the remaining 25% interest in the joint venture. High Power, as the operating entity charged with completing the mine contract, was a signatory to the National Bituminous Coal Wage Agreement. Pursuant to that agreement, High Power provided health benefits for its retirees and their eligible dependents until it ceased operations in October, 1997.

. It appears that several disputes ensued between Pratt and Geupel during 1996 and, in an effort to settle those disputes, the parties entered into a "Settlement Agreement and Release of Claims" on January 15, 1997, pursuant to which Geupel and High Power agreed to indemnify Pratt for liability imposed upon Pratt in connection with High Power's operations.[1] Specifically, Geupel and High Power agreed to indemnify and hold Pratt harmless from the following:

> [A]ll obligations, duties, claims or liabilities arising from, related to, or in any way connected with the Joint Venture, whether past, present, or future.... This indemnification and hold harmless shall extend to obligations of every kind and nature, whether contingent, disputed or unliquidated which have resulted or will result in the future from the Joint Venture and its operations including claims or demands resulting from future governmental laws or actions.

(*See* Pratt's Motion to Stay Proceedings, Exh. A, ¶ 2).

On November 10, 1997, pursuant to the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), 26 U.S.C.A. §§ 9701–9722, the Trustees of the United Mine Workers 1992 Benefit Plan (the "1992 Benefit Plan") filed this action against High Power, Geupel, and Pratt, seeking reimbursement of monies expend-

---

1. The Settlement Agreement and Release of Claims, attached as Exhibit A to Pratt's motion to stay proceedings, indicates that, at the time the agreement was executed, the parties were engaged in an arbitration proceeding in Cincinnati, Ohio, captioned *Geupel Construc-* *tion Co., Inc. v. Pratt Mining Co.*, Case No. 52–198–00032–96, and in a civil action in the Circuit Court of Nicholas County, *West Virginia, styled Pratt Mining Co. v. Geupel Construction Co., Inc.*, Civil Action No. 96–P–6.

ed by the 1992 Benefit Plan in the form of health benefits paid to eligible dependents and retirees of High Power, the "last signatory operator," as defined by § 9712(d)(6) of the Coal Act, since High Power ceased operations in October, 1997.

Recovery is also sought against Pratt and Geupel on the ground that they are "related persons" to High Power, as that term is defined by § 9701(c)(2)(A) of the Coal Act. In particular, the Trustees contend that Pratt and Geupel are joint venturers with High Power and thus they are related persons to High Power, a signatory operator, within the meaning of § 9701(c)(2)(A)(iii), which provides, along with (i) and (ii), as follows:

(2) Related persons.—

(A) In general.—A person shall be considered to be a related person to a signatory operator if that person is—

(i) a member of the controlled group of corporations (within the meaning of section 52(a)) which includes each signatory operator;

(ii) a trade or business which is under common control (as determined under section 52(b)) with such signatory operator; or

(iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest is as a limited partner.

26 U.S.C.A. § 9701(c)(2)(A)(i)-(iii).

On December 23, 1998, the Trustees filed involuntary Chapter 11 bankruptcy petitions against Geupel and High Power in the United States Bankruptcy Court for the Southern District of Ohio. Pursuant to the automatic stay provision of the Bankruptcy Code, 11 U.S.C.A. § 362, all claims of the Trustees against Geupel and High Power in this action have been stayed pending resolution of the underlying Chapter 11 cases. (*See* Notice of Bankruptcy Stay filed December 29, 1998). On April 12, 1999, Pratt moved this court for a stay of the proceedings against it pursuant to 11 U.S.C.A. § 362 and the general equitable powers of the court.

The Trustees oppose Pratt's motion on three grounds. First, the Trustees contend that this court is without jurisdiction to determine whether a stay under § 362 applies to the Trustees' claim against Pratt. Second, the Trustees maintain that Pratt, as a non-debtor codefendant, is not entitled to the benefit of a stay pursuant to § 362 and that this action should proceed against Pratt notwithstanding the bankruptcy filings of Geupel and High Power. Lastly, the Trustees argue that there is no basis for the court to impose a discretionary stay under the court's general equity powers.

## II.

The court first notes that it continues to have jurisdiction over this action inasmuch as the automatic stay provisions of 11 U.S.C.A. § 362 merely suspend proceedings and do not divest the district court of subject matter jurisdiction. *David v. Hooker, Ltd.*, 560 F.2d 412, 418 (9th Cir.1977). Furthermore, while it is correct that the bankruptcy court is the exclusive forum to consider a motion for relief from the automatic stay, the district court retains jurisdiction independent of the bankruptcy court to determine whether a pending civil action is subject to the automatic stay. *See Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990) ("[D]istrict courts retain jurisdiction to determine the applicability of the stay to litigation pending before them...."); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986) ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay."); *In re*

*Baldwin–United Corp. Litig.*, 765 F.2d 343, 346 (2d Cir.1985) ("District court has jurisdiction to determine the applicability of the automatic stay."); *Singleton v. Fifth Third Bank of Western Ohio (In re Singleton)*, 230 B.R. 533, 538–39 (6th Cir. BAP 1999) ("That the bankruptcy court may be the exclusive forum to consider a motion for relief from the automatic stay does not preclude a nonbankruptcy court from determining whether a matter pending before it is stayed by a party's bankruptcy filing."). Based upon the foregoing, the court finds that Pratt's motion for a stay of the proceedings against it pursuant to 11 U.S.C.A. § 362 and the general equity powers of the court is one properly before this court.

### III.

■ The court next determines whether § 362, which provides for an automatic stay upon the filing of a bankruptcy petition under Chapters 7, 11 and 13 of the Code, applies to stay proceedings in this action as against Pratt. Section 362(a)(1) imposes an automatic stay upon any judicial proceeding "commenced or [that] could have been commenced against the debtor" at the time of the filing of the bankruptcy proceeding. 11 U.S.C.A. § 362(a)(1). As a general proposition, the stay imposed under § 362(a)(1) applies only to bar proceedings against the debtor, and does not apply to actions against non-debtor third parties or codefendants of the debtor. *See Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126–27 (4th Cir.1983); *see also S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition)*, 817 F.2d 1142, 1148 (5th Cir.1987); *Teach-*

*ers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir.1986); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1329–30 (10th Cir.1984); *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir.1983); *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir.1983).

■ There is a line of authority which holds, however, that the scope of the stay under § 362(a)(1) may, under certain circumstances, be expanded to include non-debtor third parties or codefendants of the debtor. The leading case adopting that view is *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), in which the United States Court of Appeals for the Fourth Circuit stated that in "unusual circumstances" a court may stay proceedings against non-debtor third parties or codefendants pursuant to § 362(a)(1).[2] Several lower court decisions also support the position that in unusual situations a § 362(a)(1) stay may apply to actions against nonbankrupt codefendants. *See, e.g., Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 68 (S.D.N.Y.1990); *In re Family Health Servs., Inc.*, 105 B.R. 937, 942–43 (Bankr.C.D.Cal.1989); *Johns–Manville Corp. v. Asbestos Litig. Group (In re Johns–Manville Corp.)*, 33 B.R. 254, 263–64 (Bankr.S.D.N.Y.1983); *Plessey Precision Metals v. Metal Ctr., Inc. (In re Metal Ctr.)*, 31 B.R. 458, 462 (Bankr.D.Conn.1983).

According to the Fourth Circuit, unusual circumstances arise "when there is such identity between the debtor and the [nondebtor codefendant] that the debtor may

**2.** As aptly explained in *Bidermann Indus. U.S.A., Inc. v. Zelnik (In re Bidermann)*, 200 B.R. 779, 782 (Bankr.S.D.N.Y.1996), the courts have collapsed the related but nevertheless distinct questions of whether the automatic stay under § 362(a)(1) applies automatically to non-debtors or whether it must be extended by court order. Some courts following *Robins* have concluded that the litigation stay contained in § 362(a)(1) applies automatically in unusual circumstances to

actions against non-debtors. *See, e.g., In re Family Health Servs., Inc.*, 105 B.R. 937, 942–43 (Bankr.C.D.Cal.1989); *General Dynamics Corp. v. Veliotis (In re Veliotis)*, 79 B.R. 846, 848 (Bankr.E.D.Mo.1987). Other courts have found that § 362(a)(1) does not apply automatically in actions against non-debtors and that non-debtors must obtain a court order before proceedings against them are stayed. *See, e.g., In re Bidermann*, 200 B.R. at 782.

be said to be the real party defendant and ... a judgment against the [non-debtor codefendant] will in effect be a judgment or finding against the debtor." *Robins,* 788 F.2d at 999. The *Robins* court illustrated what it considers to be an unusual circumstance warranting application of § 362(a)(1) to a non-debtor codefendant as "a suit against a third party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against [it] in the case." *Id.*

■ In recognizing the "unusual circumstance" exception to the general rule that a stay under § 362(a)(1) applies only to debtors and not to third party codefendants, the Fourth Circuit noted that this exception does not apply to the situation "where the third party defendant [is] 'independently liable' as, for example, where the debtor and another are joint tortfeasors." *Robins,* 788 F.2d at 999 (*quoting In re Metal Ctr.,* 31 B.R. at 462); *see also O'Malley Lumber Co. v. Lockard (In re Lockard),* 884 F.2d 1171, 1179 (9th Cir. 1989). Stated differently, the "unusual circumstance" exception does not apply where the third party codefendant has obligations that are " 'independent' and primary, not derivative of those of the debtor." *In re Lockard,* 884 F.2d at 1179.

■ Pratt maintains that the circumstances of this case are identical to those described by the Fourth Circuit in *Robins* as being sufficiently unusual to warrant application of § 362(a)(1) to stay all proceedings by the Trustees against Pratt pending resolution of the bankruptcy cases of Geupel and High Power. The court rejects Pratt's argument for two reasons.

First, should this case be allowed to proceed against Pratt, and should Pratt be found to be a related person to High Power pursuant to the Coal Act, any liability of Pratt to the Trustees would be independent and primary, and not derivative of, the liability of High Power. The Coal Act specifically provides that related persons are jointly and severally liable with the last signatory operator for health benefits to all eligible beneficiaries. *See* 26 U.S.C.A. §§ 9711(c), 9712(d)(4). *Robins* is not to the contrary inasmuch as the Fourth Circuit limited its "unusual circumstance" exception to exclude cases, like this one, in which the non-debtor third party would be independently liable to the creditor. 788 F.2d at 999.

Second, the present case does not approach the "unusual circumstances" present in *Robins.* In *Robins,* the Chapter 11 debtor in possession sought a preliminary injunction to restrain the prosecution of products liability actions pending in various state and federal courts throughout the United States against Robins, the manufacturer of the Dalkon Shield, its insurer, and certain officers of Robins. The number of suits filed was approximately five thousand and the cost of defending these suits had risen into the millions of dollars. 788 F.2d at 996. The filing of Robins' bankruptcy petition had stayed all pending actions against it. *Id.* However, the debtor's injunction action was brought after the plaintiffs tried to sever their actions and continue against the non-bankrupt officers in their individual capacities. *Id.* The Fourth Circuit upheld the enjoining of these post-petition actions on the ground that a successful action brought against an officer for injuries sustained through the use of the Dalkon Shield was the equivalent of an action against the corporation itself, as both actions ultimately sought compensation under Robins' products liability insurance policy. In short, the plaintiffs sought to reach through the officers to the debtor corporation and its insurance coverage by suing the officers in their individual capacities. Based upon these circumstances, the *Robins* court applied § 362(a)(1) to stay the actions against the officers on the ground that the officers' interests were so closely intertwined with those of the debtor that the debtor could be said to be the real party in interest. *Id.* at 998–1001. Moreover, allowing the plaintiffs to proceed in a multiplicity of suits would require the ex-

penditure of massive attorney fees and costs and would risk the result of inconsistent judgments that may unfairly impact upon limited insurance proceeds, favoring those plaintiffs to the potential detriment of others who may have claims of equal right and dignity.

Stated simply, unusual circumstances are not present in this case. Indeed, the only similarity between this case and *Robins* is the fact that Pratt may be entitled to indemnification from High Power and Geupel in the event it is found liable to the Trustees. Notwithstanding the indemnification agreement between the parties, it cannot be said that the interests of High Power, Geupel and Pratt are closely intertwined in the sense contemplated by the *Robins* court merely by virtue of that agreement. As a potential joint tortfeasor under the Coal Act, Pratt is a real party in interest in this action. Accordingly, the court agrees with the Trustees and finds that the circumstances of the present case do not warrant application of § 362(a)(1) to stay the Trustees' action against Pratt.

■■■ The court is also not persuaded to stay this action against Pratt on the basis of the court's general equitable powers. While it is clear that 28 U.S.C.A. § 1334 grants the "inherent power of courts under their general equity powers and in the efficient management of their dockets to grant relief" by staying a third-party suit, *Williford*, 715 F.2d at 127, such power is not without limitation. Proper use of this authority "calls for the exercise of judgment which must weigh competing interests and maintain an even balance." *Id.* (*citing Landis v. North Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). The party seeking a stay under the court's general equity powers "must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Id.*

■■■ Pratt has failed to make the necessary showing here. Pratt maintains that the requested stay will not prejudice the Trustees, whereas allowing this case to proceed against Pratt during the pendency of the bankruptcy cases of Geupel and High Power is contrary to the interests of judicial economy. The court concludes, however, that the balancing of competing interests of the Trustees and Pratt weighs in favor of permitting this action to proceed against Pratt. The 1992 Benefit Plan has provided health benefits to High Power's eligible beneficiaries since October, 1997, without any payment by High Power, Pratt or Geupel for the resulting premiums. The Trustees have a legitimate interest in the prompt resolution of their claim against Pratt. The risk that judicial resources may be sacrificed does not outweigh the hardship to the Trustees in having to defer proceedings against Pratt until the bankruptcy proceedings of High Power and Geupel are resolved. It would be unjust for the Trustees to be delayed in recovering any monies rightfully due the Trustees from Pratt, an entity engaged in the historically risky business of coal mining, until a time when Pratt may not be financially sound.

Moreover, any liability of Pratt to the Trustees under the Coal Act arose before the indemnification agreement was reached. It would be inequitable to permit Pratt to delay the Trustees by invoking a shield it created, with the agreement of the debtors High Power and Geupel, after any such liability arose. A stay under these circumstances would be unfair to the Trustees.

### IV.

For the foregoing reasons, it is ORDERED that Pratt's motion to stay proceedings be, and it hereby is, denied.