**C.H. ROBINSON COMPANY, Plaintiff,**

v.

**PARIS & SONS, INC.,
et al., Defendants.**

**No. C01–2030–MWB.**

United States District Court,
N.D. Iowa,
Waterloo Division.

Dec. 10, 2001.

Joseph G. Bertroche, Sr., Bertroche Law Offices, Des Moines, IA, for C.H. Robinson Company.

John M. Titler, Titler & Monroe, Cedar Rapids, IA, for Paris & Sons, Inc.

Michael A. Giudicessi, Faegre & Benson, Des Moines, IA, for Midwest Agricultural Warehouse Company.

**ORDER REGARDING MIDWEST AGRICULTURE WAREHOUSE CO.'S, d/b/a UNITED AGRI PRODUCTS MN–IA, MOTION TO DISMISS AND JOINT MOTION TO CONTINUE OR SUSPEND DEADLINES**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION .......................................................1005
 A. Procedural Background.............................................1005
 B. Factual Background...............................................1006

II. LEGAL ANALYSIS.....................................................1006
 A. Standard Of Review..............................................1006
 B. Midwest's Motion To Dismiss.....................................1007
 1. The applicable statute of limitations .........................1007
 2. When did C.H. Robinson's claim accrue? ........................1008
 C. Effect Of Automatic Stay On Action Against Midwest..............1009
 1. General rule: Stay does not extend to non-debtors .............1009
 2. The exception to the general rule: A.H. Robins Co. v. Piccinin ..........1010
 3. Is extension of automatic stay truly automatic? ..............1011
 a. Eighth Circuit Court of Appeals's treatment of extensions..........1012
 b. Application of Eighth Circuit caselaw .........................1015
 c. Legislative history ...........................................1016
 4. Significance of any right of indemnity by Midwest against Paris & Sons ...........................................,.............1016
 5. Summary ......................................................1018

D. Calculation Of The Limitations Period ................................1019
E. Indispensable Party ..........................................1020

III. JOINT MOTION TO CONTINUE OR SUSPEND DEADLINES, OR, IN
 THE ALTERNATIVE, FOR A SCHEDULING CONFERENCE .............1020

IV. CONCLUSION .................................................................1020

## I. INTRODUCTION

In this motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6), one of the co-defendants, Midwest Agriculture Warehouse ("Midwest"), seeks dismissal of the plaintiff's action, as against Midwest, on the ground the action is time-barred under 49 U.S.C. § 14705(a), which imposes an eighteen month limitations period on claims based on unpaid freight charges of goods moved in interstate commerce. In the underlying action, the plaintiff seeks to recover unpaid freight charges from the codefendants, Midwest and Paris & Sons. Paris & Sons has not joined Midwest in seeking dismissal.[1]

### A. Procedural Background

The initial complaint in this action was filed in state court on July 13, 1998, against Paris & Sons. On July 20, 1998, the plaintiff amended its complaint and joined Midwest as a defendant. Shortly thereafter, on August 14, 1998, Paris & Sons filed for Chapter 11 bankruptcy. On November 12, 1998, Midwest removed the action to the United States District Court for the Northern District of Iowa.[2] The defendant filed an affidavit of notice of removal with Delaware County District Court on November 16, 1998.

However, on April 22, 1999, District Court Judge Edward J. McManus dismissed the case for want of prosecution. On May 16, 2000, the bankruptcy court also dismissed Paris & Sons's bankruptcy petition. Nearly one year later on April 13, 2001, the plaintiff again filed its complaint seeking unpaid freight charges in state court, naming both Paris & Sons and Midwest as defendants. On May 24, 2001, Midwest removed this action to federal court. Federal jurisdiction is proper pursuant to 28 U.S.C. § 1337 (commerce) and 28 U.S.C. § 1331 (federal question), and Midwest now seeks dismissal of the action as against Midwest, raising the sole contention in support of its motion to dismiss that the claims in the complaint are barred by the applicable statute of limitations.[3]

---

1. It appears that Paris & Sons has been served but has not yet filed an answer or other responsive pleading to the plaintiff's lawsuit.

2. This court takes judicial notice of the docket and pleadings of *C.H. Robinson v. Paris & Sons, Inc., et al.*, C98–2103–EJM pursuant to Federal Rule of Evidence 201. *See also Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir.1994) (holding that, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.1991) (similar); *cf. Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645 (8th Cir.2001) (taking judicial notice of SEC filings in deciding a Rule 12(b)(6) motion to dismiss) (page references not available); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir.1999) (same); *United States v. Doyle*, 121 F.3d 1078, 1088 (7th Cir.1997) (taking judicial notice of district court's docket sheet).

3. No oral arguments were requested on this motion. C.H. Robinson was represented by Joseph Beetroche of Bertroche Law Offices, Des Moines, Iowa. Midwest was represented by Michael Guidecessi and Ross Johnson of Faegre & Benson, Des Moines, Iowa.

### B. Factual Background

The underlying action in this case concerns C.H. Robinson's claim for freight charges incurred in 1997 and 1998 in connection with the shipment of goods by C.H. Robinson for Paris & Sons. C.H. Robinson contends that both Paris & Sons and Midwest (the co-defendants) are liable for the unpaid freight charges. According to the complaint, Paris & Sons entered into several agreements with C.H. Robinson between September of 1997 and February of 1998 in which C.H. Robinson shipped goods at Paris & Sons's direction from Paris & Sons's offices in Masonville, Iowa and Manchester, Iowa to various locations around the country. C.H. Robinson contends that Midwest is also liable for these charges based on a consignment agreement between the codefendants and a federal regulation that renders consignors of goods liable for freight charges, unless otherwise stipulated in the bill of lading.[4] More specifically, pursuant to an agreement between Paris & Sons and Midwest, Midwest provided to Paris & Sons on a consignment basis certain agricultural products for sale by Paris & Sons to its customers. Midwest retained ownership of all goods in the possession of Paris & Sons. Thus, according to the complaint, the goods shipped by C.H. Robinson for Paris & Sons were owned by Midwest and, consequently, C.H. Robinson contends that, as the consignor of the goods shipped, Midwest is liable for unpaid freight charges.

The crux of this motion to dismiss is the scope of the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362. The parties agree that when Paris & Sons filed for bankruptcy, C.H. Robinson's complaint against Paris & Sons was stayed and, consequently, the running of the limitations period was suspended as to the action against Paris & Sons. However, C.H. Robinson maintains that, based on Midwest's status as the consignor of the goods shipped, Midwest is an indispensable party to C.H. Robinson's action; therefore, C.H. Robinson argues that the automatic stay's tolling effect redounded to stay the action against Midwest as well. Thus, C.H. Robinson asserts that its complaint against Midwest is timely.

## II. LEGAL ANALYSIS

### A. Standard Of Review

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept the complaint's factual allegations as true and construe them in the light most favorable to [the plaintiff]." *Whitmore v. Harrington,* 204 F.3d 784, 784 (8th Cir.2000); *accord Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Anderson v. Franklin County, Mo.,* 192 F.3d 1125, 1131 (8th Cir.1999); *Gross v. Weber,* 186 F.3d 1089, 1090 (8th Cir.1999); *Midwestern Mach. v. Northwest Airlines, Inc.,* 167 F.3d 439, 441 (8th Cir.1999); *Valiant–Bey v. Morris,* 829 F.2d 1441, 1443 (8th Cir.1987). A complaint should be dismissed under Rule 12(b)(6) only if, taking the allegations as true, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."

---

**4.** In its answer to C.H. Robinson's complaint, Midwest denies that it is the consignor of goods shipped by C.H. Robinson, denies that the federal regulation on which C.H. Robinson relies is applicable, and denies that Midwest is liable for the unpaid freight charges even if the regulation applies. Nevertheless, the court must assume for the purposes of ruling on a 12(b)(6) motion that the facts contained in the plaintiff's petition are true. Consequently, the court assumes, without deciding, that Midwest is the consignor of the goods shipped by C.H. Robinson, for which C.H. Robinson contends freight charges are owing.

*Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Knapp v. Hanson,* 183 F.3d 786, 788 (8th Cir.1999) ("A motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.' ") (quoting *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986), and citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This court also observes that a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will prevail on the merits, but rather tests whether the plaintiff has properly stated a claim upon which relief can be granted. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). On a 12(b)(6) motion to dismiss on the ground the action is time-barred, the court determines merely whether "it is apparent from the face of the complaint that the time limit for bringing the claim has passed." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1308, at 695 (2d ed.1990).

### B. Midwest's Motion To Dismiss

#### 1. The applicable statute of limitations

In its complaint, C.H. Robinson relies on 49 C.F.R. Part 1035, Appendix B, Section 7 as the basis of Midwest's liability for unpaid shipping charges. Plaintiff's Complt. ¶ 9. This regulation provides:

> The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor ... shall not be liable for such charges.

49 C.F.R. Pt. 1035, App. B, Sec. 7 (2000).

Midwest asserts, and C.H. Robinson does not dispute, that the applicable statute of limitations on Paris & Sons's claim against Midwest is 49 U.S.C. § 14705(a), which prescribes a statute of limitations of eighteen months for all actions relating to transportation services: "A carrier providing transportation or service subject to jurisdiction under chapter 135 must begin a civil action to recover charges for transportation or service provided by the carrier within 18 months after the claim accrues." 49 U.S.C. § 14705(a). Chapter 135, in turn, provides in pertinent part that "[t]he Secretary [of Transportation] and the [Surface Transportation] Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier" in interstate or foreign commerce. 49 U.S.C. § 13501.

In this instance, the face of the complaint and supporting documents submitted by the plaintiff in its resistance to this motion make clear that the charges sought to be recovered involved the shipment of goods across state lines, *i.e.,* in interstate commerce. First, C.H. Robinson's complaint against Midwest specifically relies on a federal regulation that applies only to goods moved in interstate commerce. Plaintiff's Complt. ¶ 9. Second, C.H. Robinson concedes in its brief resisting Midwest's motion to dismiss that it shipped goods for Paris & Sons in interstate commerce. C.H. Robinson states that "[i]n 1997 and 1998 Paris & Sons hired CH Robinson to transport goods owned by Midwest *across the United States....* CH Robinson in fact did ship said goods and incurred freight charges as a result of

shipping the goods." Plaintiff's Br., at 2–3 (emphasis added). Even according all reasonable inferences from these facts to the plaintiff, *see Beto,* 405 U.S. at 322, 92 S.Ct. 1079, the court concludes that C.H. Robinson's claim concerns the shipment of goods that moved in interstate commerce. Thus, C.H. Robinson is a "carrier providing transportation or service subject to jurisdiction under chapter 135," to which the eighteen month statute of limitations applies regarding the collection of unpaid freight charges.[5] 49 U.S.C. § 14705(a).

Having concluded that the limitations period on C.H. Robinson's claim against Midwest is eighteen months, the court must next consider whether that period has expired.

### 2. When did C.H. Robinson's claim accrue?

■ Assuming a claim brought pursuant to 49 C.F.R. Pt. 1035, App. B, Sec. 7 is a viable cause of action,[6] the court must determine as a threshold matter when C.H. Robinson's cause of action accrued against Midwest. By statute, "[a] claim related to the shipment of property accrues . . . on delivery or tender of delivery by the carrier." 49 U.S.C. § 14705(g). "Courts have construed identical language in another section of the same statute to

impose an absolute deadline on filing a claim." *Advanced Warehouse & Distribution Servs., Inc. v. Caliber Logistics Healthcare, Inc.,* 1998 WL 907011, *3 (N.D.Tex. Dec.18, 1998) (citing *Wisconsin Bridge & Iron Co. v. Illinois Terminal Co.,* 88 F.2d 459, 462 (7th Cir.1937), which applied 49 U.S.C. § 16(3) of Interstate Commerce Act, a predecessor of 49 U.S.C. § 14705 and stated that "[t]he cause of action in respect of a shipment of property shall, for the purposes of this section, be deemed to accrue upon delivery or tender of delivery thereof by the carrier, and not after" and held that "the lapse of time not only bars the remedy but also destroys the liability."; and *Axinn & Sons Lumber Co. v. Long Island Rail Road Co.,* 466 F.Supp. 993, 1000 (E.D.N.Y.1978), which stated that "[a]ccording to Congressional intent, section 16(3)(c) and (e) must be read literally."; and *Baker v. Chamberlain Manufacturing Corp.,* 356 F.Supp. 1314, 1317–18 (N.D.Ill.1973), which applied 49 U.S.C. § 16(3) and held this limitations period is a clear expression of congressional policy and, therefore, must be strictly construed).

The United States District Court for the Northern District of Illinois has held that a claim accrues on the date of the last delivery. *Baker v. Chamberlain Mfg.*

---

5. The court notes that the eighteen month statute of limitation contained in 49 U.S.C. § 14705(a) supersedes the previous three year limitations period, which was codified as 49 U.S.C. § 11706. Other courts have held that section 14705's limitations period is not retroactive to claims accruing before the enactment of section 14705 in 1996. *E.g., In re Apex Exp. Corp.,* 190 F.3d 624, 642–43 (4th Cir.1999) (recognizing constitutional concerns of retroactively applying-section 14705's eighteen month statute of limitations and concluding "Congress did not speak with the clarity required by *Landgraf* retroactively to cancel previously valid claims."); *Double "S" Truck Line, Inc. v. Alliant Foodservice, Inc.,* 1998 WL 299458, at *4 (N.D.Ill. May 29, 1998) (holding section 14705(a) did not apply

retroactively, and reasoning that "if retroactively applied, the eighteen month statute of limitations in 49 U.S.C. § 14705(a) would impair Double 'S' right to bring suit within the three year period provided for in 49 U.S.C. § 11706(a) (1993) at the time of the events alleged in the complaint."). However, the freight charges allegedly incurred by C.H. Robinson do not implicate this concern, because the shipments took place during 1997 and 1998; in other words, the claim accrued after the enactment of 49 U.S.C. § 14705(a).

6. The court expresses no opinion on this matter, but assumes that the regulation in question is a viable cause of action for the purposes of this 12(b)(6) motion.

*Corp.,* 356 F.Supp. 1314, 1321 (N.D.Ill. 1973) (construing 49 U.S.C. § 16(3)(e), which is the predecessor to 49 U.S.C. § 14705(g) and contains nearly identical language). The documents submitted in conjunction with C.H. Robinson's complaint disclose that C.H. Robinson was hired by Paris & Sons on several occasions. C.H. Robinson's first shipment for Paris & Sons occurred on September 26, 1997, while the last shipment occurred on February 17, 1998. Midwest did not argue that C.H. Robinson's claims accrued on each separate delivery date, but instead conceded that the claim accrued on February 17, 1998. Consequently, the court, too, will assume that C.H. Robinson's claim against Midwest accrued on February 17, 1998. Because this is the latest possible date C.H. Robinson's claim could have accrued and, thus, the date most favorable to C.H. Robinson's position, the court's utilization of this date for purposes of ruling on Midwest's motion to dismiss is in accordance with Federal Rule of Civil Procedure 12(b)(6)'s presumption that all reasonable factual inferences should be afforded to the plaintiff. *See, e.g., Whitmore,* 204 F.3d at 784. Furthermore, as will become evident below, the outcome of this ruling would not change were the court to address each individual shipment separately.

### C. Effect Of Automatic Stay On Action Against Midwest

The parties do not dispute that approximately five months of the limitations period ran before C.H. Robinson filed its initial petition in state court. More precisely, C.H. Robinson made its last delivery for Paris & Sons on February 17, 1998, and filed its state court petition to recover freight charges on July 13, 1998—one hundred forty-six days after the last delivery. The parties, however, part ways with respect to their conceptions of the effect of Paris & Sons's August 14, 1998 filing for Chapter 11 bankruptcy.

The automatic stay provision of the Bankruptcy Code provides, in pertinent part, as follows:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> . . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> . . . .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a).

### 1. General rule: Stay does not extend to non-debtors

As a general proposition, this automatic stay provision of the Bankruptcy Code applies only to bar actions against the debtor and does not extend to solvent codefendants. *E.g., Sav–A–Trip, Inc. v. Belfort,* 164 F.3d 1137, 1139 (8th Cir.1999) ("Extension of an automatic stay to a debtor's co-defendants is only proper in unusual circumstances.") (citing *Croyden Assocs. v. Alleco, Inc.,* 969 F.2d 675, 676 (8th Cir. 1992)); *Stephen Inv. Sec., Inc. v. S.E.C.,* 27 F.3d 339, 342 (8th Cir.1994) (recognizing "automatic stay extends to claims against debtor but does not extend to non-bankrupt codefendants") (citing *Croyden As-*

*socs.,* 969 F.2d at 677); *Croyden Assocs.,* 969 F.2d at 677 (holding that court is "persuaded that the stay required by section 362 should extend only to claims against Alleco, and that the stay is not available to nonbankrupt codefendants, 'even if they are in a similar legal or factual nexus with the debtor.' ") (quoting *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991), and citing *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984), which held nothing in section 362 purports to extend automatic stay to claims against debtor's solvent codefendants); *see also Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544 (5th Cir.1983) ("Although judicial interpretation is checkered as to the extent of this statutorily required stay, resolution of the question presented requires a walk down a path as yet unblazed by this court. At trail's end we conclude that § 362 does not operate as an automatic stay of claims against the co-defendants. . . ."); *Cushman & Wakefield, Inc. v. Backos,* 129 B.R. 35 (E.D.Pa.1991) ("The automatic stay of chapter 11 bankruptcy, 11 U.S.C. § 362(a), is limited to debtors and ordinarily does not encompass non-bankrupt co-defendants.") (citing *Teachers Ins. & Annuity Ass'n of Am. v. Butler,* 803 F.2d 61, 65 (2d Cir.1986); and comparing *A.H. Robins Inc. v. Piccinin,* 788 F.2d 994, 999–1001 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), which held that automatic stay may be extended to non-bankrupt co-defendants in unusual circumstances). Nevertheless, the Eighth Circuit Court of Appeals has recognized that, under "unusual circumstances," the automatic stay provision can embrace claims against non-bankrupt codefendants. *See Sav–A–Trip,* 164 F.3d at 1139; *Croyden Assocs.,* 969 F.2d at 677; *Stephen Inv. Sec., Inc.,* 27 F.3d at 342 n. 5 (acknowledging that "a bankruptcy court's automatic stay might also apply to property of [a] third party non-debtor" under limited cir-

cumstances, but stating "[e]ven if we were to acknowledge this limited exception, we could conclude that there is an insufficient identity of interest between [the codefendants]") (citing *A.H. Robins Co.,* 788 F.2d at 999; and *In re North Star Contracting Corp.,* 125 B.R. 368, 370–71 (S.D.N.Y. 1991)).

The leading case on the extension of the automatic stay provision to solvent codefendants is *A.H. Robins Co.,* 788 F.2d at 994, and the Eighth Circuit Court of Appeals has cited this case approvingly in its decisions to address the issue of the scope of the automatic stay. *See Sav–A–Trip,* 164 F.3d at 1139 (citing *Croyden Assocs.,* 969 F.2d at 676, which in turn cites *A.H. Robins Co.); Croyden Assocs.,* 969 F.2d at 677 (citing *A.H. Robins Co.); Stephen Inv. Sec., Inc.,* 27 F.3d at 342 n. 5 (citing *A.H. Robins Co.).* Consequently, this court will look to the Fourth Circuit Court of Appeals's analysis in *A.H. Robins* for guidance in considering whether the automatic stay provision suspended the running of the limitations period with respect to C.H. Robinson's claim against Midwest.

### 2. The exception to the general rule: A.H. Robins Co. v. Piccinin

The *A.H. Robins Co.* case arose out of a flurry of products liability lawsuits against A.H. Robins Co., which manufactured an intrauterine contraceptive device known as the Dalkon Shield. *A.H. Robins Co.,* 788 F.2d at 996. Overwhelmed by the avalanche of actions against it, A.H. Robins Co. filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq. Id.* Upon filing for bankruptcy, all actions against A.H. Robins Co. were automatically stayed under section 362(a) of the Bankruptcy Code. *Id.* However, although approximately one-half of the Dalkon Shield lawsuits named A.H. Robins Co. as the sole defendant, the oth-

ers named one or more codefendants who were officers of the corporation. *Id.* After the suits against A.H. Robins Co. were stayed, a number of the plaintiffs involved in suits in which there were other named defendants sought to sever their actions against A.H. Robins Co. and to proceed with their claims against the codefendants. *Id.* A.H. Robins Co. opposed severance and instituted an adversary proceeding, seeking injunctive relief restraining the prosecution of the actions against A.H. Robins Co.'s codefendants. *Id.* at 997. After recognizing that the bankruptcy court indeed possessed the authority to stay actions against non-debtor codefendants, the Fourth Circuit Court of Appeals proceeded to find unusual circumstances existed that justified the bankruptcy court's exercise of these powers. *See generally id.* at 998–1009.

In extending the scope of the automatic stay provision, the Fourth Circuit held that "[t]his 'unusual situation,' it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.* at 999. In that case, the identity of interests was clear: a suit against a corporate officer is effectively one against the corporation itself. *See id.* An extension of the stay was justified because the codefendants were entitled to be indemnified by A.H. Robins Co. and its insurer "under the corporate by-laws and the laws of ... the State of debtor's incorporation." *Id.* at 1007. The court reasoned that "[i]t seems incontestable that, if the suits are permitted to continue and discovery allowed, any effort at reorganization of the debtor will be frustrated, if not permanently thwarted[ ]," because "any of these suits against [the] co-defendants, if successful, would reduce and diminish the insurance fund or pool ... and

thereby affect the property of the debtor to the detriment of the debtor's creditors as a whole." *Id.* at 1008. Consequently, the appellate court sustained the district court's grant of a preliminary injunction. *Id.* at 1008.

### 3. Is extension of automatic stay truly automatic?

The *A.H. Robins Co.* court analyzed the bankruptcy court's power to stay actions against non-debtor defendants under three separate provisions of the Bankruptcy Code, sections 362(a)(1), 362(a)(3), and 105. *See id.* at 999–1004. Because of the complexity of the case, the court held that the *A.H. Robins Co.* case implicated all statutory grounds on which the bankruptcy court could enjoin suits "against the bankrupt or its assets and property." *Id.* at 1003–04. Nonetheless, several subsequent courts to apply *A.H. Robins Co.* have held that extensions of the automatic stay to preclude the continuation of a suit against a non-debtor are essentially a utilization of the bankruptcy court's equity jurisdiction under section 105 to issue an injunction extending the stay. *E.g., In re Aldan Indus., Inc.,* 2000 WL 357719, at *8 (Bankr.E.D.Pa.2000) (extension of stay under section 362 is exercise of court's equity jurisdiction under section 105 of Bankruptcy Code); *All Seasons Resorts, Inc. v. Milner,* 79 B.R. 901, 903 (C.D.Cal.1987) (extension of stay not automatic but requires filing of adversary proceeding under section 105). *But see In re Family Health Servs., Inc.,* 105 B.R. 937, 942 (Bankr.C.D.Cal.1989) (observing Fourth Circuit in *A.H. Robins Co.* found "three separate grounds [§§ 362(a)(1), 362(a)(3), 105] for issuing a preliminary injunction against nondebtor parties").

This distinction is an important one and not merely one of semantics. That is so because, unlike a stay under section 105,

the litigation stay contained in section 362 applies automatically and does not necessitate an affirmative act on the part of the debtor to obtain a court order. *See* 11 U.S.C. § 362(a); *compare Bidermann Indus. U.S.A., Inc. v. Zelnik,* 200 B.R. 779, 782 (Bankr.S.D.N.Y.1996) (holding extension of automatic stay to non-debtor codefendants does not occur automatically but rather requires court order under section 105); *All Seasons Resorts, Inc.,* 79 B.R. at 903–904 (same), *with North Star Contracting Corp. v. McSpedon,* 125 B.R. 368, 370 (S.D.N.Y.1991) (holding extension of stay because of "unusual circumstances" under 362(a)(1) occurs automatically and does not require the procurement of a court order); *General Dynamics Corp. v. Veliotis (In re Veliotis),* 79 B.R. 846, 848 (E.D.Mo.1987) ("The stay operates automatically in a non-bankruptcy lawsuit when a judgment against a non-debtor defendant is in effect a judgment against the debtor, and, therefore, a claim against the estate."). The Bankruptcy Court for the Southern District of West Virginia recently observed:

> [T]he courts have collapsed the related but nevertheless distinct questions of whether the automatic stay under § 362(a)(1) applies automatically to non-debtors or whether it must be extended by court order. Some courts following *Robins* have concluded that the litigation stay contained in § 362(a)(1) applies automatically in unusual circumstances to actions against non-debtors. *See, e.g., In re Family Health Servs., Inc.,* 105 B.R. 937, 942–43 (Bankr.C.D.Cal.1989); *General Dynamics Corp. v. Veliotis (In re Veliotis),* 79 B.R. 846, 848 (Bankr. E.D.Mo.1987). Other courts have found that § 362(a)(1) does not apply automatically in actions against non-debtors and that non-debtors must obtain a court order before proceedings against them are stayed. *See, e.g., In re Bidermann,* 200 B.R. at 782.

*Holland v. High Power Energy,* 248 B.R. 53, 57 n. 2 (S.D.W.Va.2000).

### a. Eighth Circuit Court of Appeals's treatment of extensions

The Eighth Circuit Court of Appeals has not directly answered this question, but its cases dealing with extensions of the automatic stay are instructive with respect to the appellate court's posture concerning this issue. The Eighth Circuit's first treatment of an extension of the section 362 stay was in *Dennis v. A.H. Robins Co.,* 860 F.2d 871 (8th Cir.1988) (per curiam). The issue before the court in that case was whether the district court had the power to dismiss a non-bankruptcy action that was stayed pursuant to the Bankruptcy Code's automatic stay provision for failure to follow court orders. *Id.* at 871–72. While the appellate court concluded the district court was not prevented from dismissing the case because of the automatic stay, the court also ruled that dismissal was an excessive sanction under the facts of the case. *Id.* at 872.

Relevant to Midwest's motion to dismiss, however, is the court's expression of doubt concerning the scope of the automatic stay. The underlying personal injury action in *Dennis* involved claims against A.H. Robins Co. and the plaintiff's treating physician, Dr. Schwartz, for injuries allegedly sustained as a result of using the Dalkon Shield intrauterine device. *Id.* at 871. The Fourth Circuit in *A.H. Robins Co.,* the same A.H. Robins Co. involved in Dennis's action, extended the litigation stay to the codefendants in the host of products liability cases that were pending against A.H. Robins Co. Apparently in reliance on the Fourth Circuit case, the District Court in *Dennis* entered a stay as against A.H. Robins Co. and Dr. Schwartz. *See id.* at 871–72. The Eighth Circuit, however, questioned the propriety of extending the stay to the action against Dr. Schwartz:

We express some reservation as to whether the automatic stay should have been expanded to include Dennis's claim against Dr. Schwartz. Although the facts of this case have not been fully developed, Dr. Schwartz does not appear to have had such a relationship with A.H. Robins that his defense would affect A.H. Robins in the manner contemplated by the Fourth Circuit cases. We do, however, recognize that while any involvement A.H. Robins may have in this individual lawsuit against Dr. Schwartz would not be burdensome, the same level of involvement by A.H. Robins in the thousands of other similar cases now pending against doctors could be overwhelming.

*Id.* at 872–73. It appears, then, that if A.H. Robins Co. had not been subject to literally thousands of claims against it, the Eighth Circuit would not have begrudgingly accepted the extension of the stay.[7]

The Eighth Circuit was again hesitant to extend the Bankruptcy Code's automatic stay in *Croyden Associates*, 969 F.2d at 677. *Croyden Associates* involved the appeal of the district court's approval of a class action settlement agreement. *Id.* The underlying lawsuit involved the debtor's issuance of $105 million in 9½% debentures, which the solvent codefendant was to assume. *Id.* at 676. While the appeal was pending, the debtor filed for bankruptcy under Chapter 11. *Id.* at 677. The appellate court "sought response of the other parties as to the proper extent of the stay." *Id.* The non-bankrupt codefendant argued that the action should also be stayed against it if the action was stayed against the debtor. *Id.* The court held,

however, that "the stay required by section 362 should extend only to claims against [the debtor], and that the stay is not available to nonbankrupt codefendants, 'even if they are in a similar legal or factual nexus with the debtor.'" *Id.* (quoting *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991); and citing *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir. 1984), which held nothing in section 362 purports to extend automatic stay to claims against debtor's solvent codefendants). The court recognized that some circuits permit an extension of the stay under "unusual circumstances," but ultimately refused to pass on the issue because "[d]ecisions involving whether a stay is appropriate when a supersedeas bond has been filed or whether a party may move to dismiss an action commenced by a debtor do not reach the issue before us." *Id.*

Two years later, in *Stephen Investment Securities,* the Eighth Circuit was still reluctant to adopt wholesale the *A.H. Robins Co.* approach to an extension of the automatic stay. *See Stephen Inv. Sec.,* 27 F.3d at 342 n. 5 (stating "[e]ven if we were to acknowledge this limited exception [in which the bankruptcy court's automatic stay might also apply to property of third-party non-debtors where an identity of interest exists], we could conclude that there is an insufficient identity of interest between Oliver and Stephen, Inc."). In that case, the debtor was the control person for two brokerage firms, ORS and Stephen, Inc.. *Id.* at 340. After an arbitration award was entered against the ORS firm, the debtor ceased operations

---

7. The Fourth Circuit itself in *A.H. Robins Co.* recognized that the case was truly an exceptional one. *See A.H. Robins Co.,* 788 F.2d at 996. Namely, the case was set against the backdrop of more than 9,000 claims; the court stated that "by mid 1985, Robins, along with its insurer, Aetna Casualty & Surety Company, 'had paid roughly $517 million for 25 trial judgments and 9,300 settlements since the first verdict in 1975.'" *Id.* at 996 n. 4 (quoting Nat. L.J., at 10 (Mar. 17, 1986)).

and transferred funds from ORS to Stephen, Inc., for no consideration. *Id.* at 341. As a result of this diversion of funds from ORS to Stephen, Inc., the arbitration award remained unpaid. *Id.* After the arbitration award creditor filed a complaint against Stephen, Inc. and ORS, the debtor filed for bankruptcy. *Id.* The SEC found ORS had violated National Association of Securities Dealers, Inc. rules by diverting the funds and ordered the transferred funds put into a trust account in order to satisfy the arbitration award. *Id.* However, the debtor and Stephen, Inc. argued that the SEC's ruling violated the automatic stay in place in connection with the debtor's bankruptcy. *Id.* Finding that the SEC's order did not implicate the debtor's property, the court rejected the parties' contention that the stay was violated. *Id.* at 341–42.

Notably, the court did not address whether the stay could have been extended to Stephen, Inc. by virtue of an identity of interest between Stephen, Inc. and the debtor, instead only observing in a footnote that "[s]ome courts have acknowledged that under limited circumstances where an identity of interest exists between a debtor and a third party non-debtor, a bankruptcy court's automatic stay might also apply to property of the third party non-debtor." *Id.* at 342 n. 5 (citing *A.H. Robins Co.*, 788 F.2d at 999; and *In re North Star Contracting Corp.*, 125 B.R. 368, 370–71 (S.D.N.Y.1991)).

It was not until 1999 in *Sav–A–Trip*, 164 F.3d at 1139, that the Eighth Circuit explicitly recognized the *A.H. Robins Co.* approach to extensions of the automatic stay to non-debtor codefendants. Interestingly, however, the court did not cite directly to *A.H. Robins Co.*, despite its use of the Fourth Circuit's language, for the proposition that the automatic stay may, under unusual circumstances, be extended to non-bankrupt codefendants. *See id.*

The court stated that "the automatic stay enjoyed by [the debtor] defendants does not properly extend to appellants. Extension of an automatic stay is only proper in unusual circumstances. Appellants have not demonstrated any unusual circumstances which would justify such an extension." *Id.* (internal citation omitted although citing to *Croyden Assocs.*, 969 F.2d at 676). Thus, the court recognized that the stay could be extended, but refused to extend it under the facts before the court. *Id.*

In *Sav–A–Trip*, the appellants sought reversal of the district court's confirmation of an arbitration award and moved to vacate the award on the ground, *inter alia,* the district court erred in refusing to extend to them the bankruptcy automatic stay enjoyed by two of the codefendants. *Id.* Although the court summarily rejected this contention, it appears that the basis of the appellants' argument was an identity of interests between the debtors and the appellants. *See id.* at 1138–39. Namely, the appellants were the president and vice-president of the bankrupt company. *Id.* at 1139. Further, the other bankrupt defendant, Bloom, was a fellow employee who apparently committed the malfeasance at issue in the case, whereas the appellants were adjudged liable for the debtor's actions on the ground they were "controlling persons" under the Kansas Securities Act. *Id.* Therefore, this case further illustrates the Eighth Circuit's hesitancy to extend stays to non-debtor codefendants because, based on the relationships in question in *Sav–A–Trip*, the appellants were arguably within the penumbra of the Fourth Circuit's interpretation of the scope of the automatic stay; had the court considered this a close question, it probably would have devoted a more thorough analysis to the argument.

#### b. *Application of Eighth Circuit caselaw*

Based on Eighth Circuit caselaw, which is illustrative of a generalized reluctancy to expand the scope of the automatic stay provision of the Bankruptcy Code and to limit any expansion to truly extraordinary cases, it is this court's opinion that the Eighth Circuit Court of Appeals would agree with those courts that read *A.H. Robins Co.* to require that the debtor affirmatively move the bankruptcy court to extend the automatic stay to actions involving non-bankrupt codefendants. *See, e.g., 555 M Mfg., Inc. v. Calvin Klein, Inc.,* 13 F.Supp.2d 719, 722 (N.D.Ill.1998) (refusing to extend stay to solvent codefendant where solvent codefendant arguably entitled to contractual indemnification but debtor did not request extension of stay and bankruptcy court did not grant one); *Aldan Indus.,* 2000 WL 357719, at *8 (ruling that "even when unusual circumstances exist justifying an extension of the automatic stay to non-debtor parties, a bankruptcy court must rely upon its equity jurisdiction under § 105 to issue an injunction extending the stay"); *Bidermann Indus.,* 200 B.R. at 782 (concluding "section 362(a)(1) does not apply automatically to stay actions against non-debtors"); *All Seasons Resorts,* 79 B.R. at 903 (holding extension of automatic stay because of "unusual circumstances" does not occur automatically "but requires the filing of an appropriate adversary proceeding under § 105 and § 362 to achieve the desired result"); *accord In re Veliotis,* 79 B.R. at 848 (concluding record before bankruptcy court insufficient to determine whether automatic stay should be extended because "there is a mixed question of law and fact as to whether any liability on behalf of [the non-debtor codefendant] is derivative of any liability on behalf of the Alleged Debtor, or whether any liability of [the non-debtor codefendant] may be separate from and independent of any liability of the Alleged Debtor" and stating that "[i]n very narrow circumstances, the courts have determined that certain actions against a non-debtor third party are stayed either automatically by operation of Section 362 or by imposition of a 'special' stay pursuant to 11 U.S.C. § 105[ ]") (citing *United States v. Davis,* 666 F.Supp. 641, 644 (S.D.N.Y.1987)). *But see Duval v. Gleason,* 1990 WL 261364, at *3 (N.D.Cal. Oct.19, 1990) (stating "identification of the parties" extension of stay "operates automatically to prevent creditors from proceeding with a lawsuit against a non-debtor codefendant"); *In re Family Health Servs., Inc.,* 105 B.R. at 942–43 (holding *A.H. Robins Co.*-type stay under unusual circumstances arises automatically without the need to procure a court order).

The holding of *A.H. Robins Co.* and the legislative history of the automatic stay provision support this conclusion. First, the *A.H. Robins Co.* court did not decide whether extensions of bankruptcy stays to non-debtor codefendants were automatic; instead, the court ruled that "*the district court did not commit an abuse of discretion in granting the injunction....*" *A.H. Robins Co.,* 788 F.2d at 1008 (emphasis added). The court looked to sections 362(a)(1), 362(a)(3), and 105(a) in reaching this conclusion and held that this case implicated each of these sections. *Id.* at 1004–05. Each section, in turn, empowered the bankruptcy court to "enjoin suits against the bankrupt or its assets and property." *Id.* Because the debtor brought an adversary proceeding seeking to enjoin the continuation of the actions against its codefendants, the court was not asked to decide the appropriate procedure to invoke such an extension. The court merely decided that the Bankruptcy Code authorized the bankruptcy court to stay proceedings pending against non-bankrupt defendants when the debtor is a real party in interest to the action. *Id.* at 1004.

### c. Legislative history

Second, the legislative history of section 362(a)(1) supports this courts conclusion. The United States Bankruptcy Court for the Northern District of California accurately described this history in *In re Related Asbestos Cases,* 23 B.R. 523, 527–28 (N.D.Cal.1982):

> The legislative history notes that the stay protects creditors from the injustice of a race for the debtor's assets; The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that. H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 340 (1978), U.S.Code Cong. & Admin. News 1978, 6297. And it serves to protect the debtor: The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. S.Rep. No. 95–989, 95th Cong., 2d Sess. 54–55 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5840–5841.

■ Because the stay is principally designed to protect the debtor and its estate on behalf of creditors, Paris & Sons's silence in not seeking a stay in this action despite Midwest's candid assertion in its removal of the state action in November of 1998 that "any liability which may be adjudge[d] against Midwest Agricultural Warehouse in the Civil Action will increase Midwest Agricultural Warehouse's claim against the Debtor and the bankruptcy estate, such that resolution of the issues in the Civil Action will affect administration of Debtor's estate[ ]" is a pregnant one. Midwest's Ex. A, ¶ 5. Paris & Sons was evidently comfortable with the possibility of Midwest's claim for indemnification.

### 4. Significance of any right of indemnity by Midwest against Paris & Sons

Furthermore, C.H. Robinson seeks to hold Midwest responsible for the freight charges in question on the basis of a federal regulation, not based on the contract between Midwest and Paris & Sons. In the Fourth Circuit's treatment of 362(a)(1), the court relied heavily on *In re Metal Center,* 31 B.R. 458 (Bankr.D.Conn.1983) for its illustration of the extension of a section 362(a) stay to non-debtors. In *Metal Center,* the third-party had been sued, along with the debtor, on his guarantee of the debtor's obligation. *In re Metal Center,* 31 B.R. at 459. After the debtor filed for bankruptcy protection, the guarantor moved to stay the action as against him. *Id.* Although the court granted the stay, it did not do so pursuant to 11 U.S.C. § 362(a)(1), because the court held that any judgment would not be binding on the bankruptcy court. *Id.* at 463. The Fourth Circuit rejected this reasoning but agreed that a stay was proper under the circumstances of the *Metal Center* case, even though the court opined that a stay under 362(a)(1) would have been the more logical result. *A.H. Robins Co.,* 788 F.2d at 1000. The *A.H. Robins Co.* court noted that the fact the guarantor was entitled to indemnification by the debtor on account of any judgment rendered against him because of the guarantee sufficiently bound the identities of the parties to justify an extension

of the automatic stay provision. *See id.* at 999–1000.

■ The other cases cited in this section of the Fourth Circuit's *A.H. Robins Co.* decision also involve guarantors. *See id.* at 999–1001 (citing *Seybolt v. Bio–Energy of Lincoln, Inc.,* 38 B.R. 123 (Bankr. D.Mass.1984)), which granted stay and reasoned that " 'the liability of the non-debtor is imputed to the debtor by operation of law' ", and *In re Brentano's,* 27 B.R. 90 (Bankr.S.D.N.Y.1983), which involved the situation of a guarantor of a debtor in a Chapter 11 proceeding who was entitled under contract to indemnity by the debtor against any judgment against him and stated that the action against the indemnitor " 'could and would affect the estate in bankruptcy,' since, under the indemnity agreement, 'a judgment in favor of the [plaintiff] in the guaranty action would automatically result in indemnification liability against Brentano's' [*i.e.,* the indemnitor].", and *In re Johnie T. Patton, Inc.,* 12 B.R. 470 (Bankr.D.Nev. 1981), and *In re Lucasa Internat'l, Ltd.,* 6 B.R. 717 (Bankr.S.D.N.Y.1980), and *In re Brothers Coal Co.,* 6 B.R. 567 (Bankr. W.D.Va.1980) (all involving guarantors of debtor's obligations). These citations make clear that an extension of a stay pursuant to subsection (a)(1) is appropriate when there is an automatic creation of liability against the debtor because of any judgment against the non-debtor codefendant. *See A.H. Robins Co.,* 788 F.2d at 1001. In *A.H. Robins Co.,* the non-debtor codefendants were entitled to be indemnified by A.H. Robins Co. and its insurer "under the corporate by-laws and the laws of . . . the State of debtor's incorporation." *Id.* at 1007.

■ In this case, despite the fact Midwest is arguably entitled to indemnification from Paris & Sons, C.H. Robinson's claim against Midwest, which is based on 49 C.F.R. Part 1035, Appendix B, Section 7, is independent from any claim Midwest may have against Paris & Sons for indemnification. "[U]nusual circumstances do not exist where the debtor's insider is independently liable, the right to indemnity is not absolute, and the continuation of the suit will not interfere with the bankruptcy." *In re Bidermann,* 200 B.R. at 784 (citing *CAE Indus. v. Aerospace Holdings Co.,* 116 B.R. 31, 33–34 (S.D.N.Y.1990), and *Aetna Cas. & Sur. Co. v. Namrod Dev. Corp.,* 140 B.R. 56, 60 (S.D.N.Y.1992)); *accord A.H. Robins Co.,* 788 F.2d at 999 (unusual circumstances do not exist "where the third party defendant [is] 'independently liable' as, for example, where the debtor and another are joint tortfeasors") (quoting *In re Metal Ctr.,* 31 B.R. at 462); *Holland,* 248 B.R. at 58 ("[T]he 'unusual circumstance' exception does not apply where the third party codefendant has obligations that are 'independent and primary, not derivative of those of the debtor.' ") (quoting *O'Malley Lumber Co. v. Lockard (In re Lockard),* 884 F.2d 1171, 1179 (9th Cir.1989)).

In this case, the consignment agreement between Paris & Sons and Midwest contains an indemnification clause. Plaintiff's Ex. F (para.12). In pertinent part, the agreement provides:

Consignee [Paris & Sons] shall and hereby agrees to defend, indemnify, and hold Company [Midwest] harmless against and in respect of: All debts, liabilities, and obligations of Consignee [Paris & Sons], or relating to Consignee's business operations, or any nature, whether accrued, absolute, contingent or known or unknown on or before, or after the date hereof existing or arising out of or resulting from events which occur or fail to occur on, before, or after the date hereof, and Any damage or deficiency resulting directly or indirectly from any misrepresentation, breach of warranty or nonfulfillment of any agreement on the part of the Consignee [Paris & Sons]

under this agreement, or from any misrepresentation and/or omission from any certificate or other instrument furnished or to be furnished to Company [Midwest] hereunder.

Plaintiff's Ex. F (para.12(B)).

The court previously noted that, in ruling on a 12(b)(6) motion to dismiss, the court is not permitted to test the merits of the plaintiff's case; the court's role is limited to determining whether the plaintiff has properly stated a claim upon which relief can be granted. *See Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. Accordingly, this court presumes for the purposes of this motion that the consignment agreement attached to the plaintiff's state court petition and submitted in support of its resistance to Midwest's motion to dismiss is a contract to indemnify, such that a judgment against Midwest would result in liability against Paris & Sons. Midwest concedes as much in its November, 1998 Notice of Removal.

At the same time, however, the mere existence of a contractual obligation to indemnify the non-debtor codefendant is probably insufficient to invoke the narrow exception to the rule that " '[a]ctions against co-defendants, guarantors, or principles of the debtor generally are not barred by the § 362(a) stay.' " *University Med. Ctr. v. American Sterilizer Co.,* 82 B.R. 754 (Bankr.E.D.Pa.1988) (quoting *Personal Designs, Inc. v. Guymar, Inc.,* 80 B.R. 29, 30 (E.D.Pa.1987)); *see Algemene Bank Nederland, N.V. v. Hallwood Indus., Inc.,* 133 B.R. 176, 180 n. 3 (W.D.Pa.1991) ("specifically reject[ing] the dictum stated by the Fifth [sic] Circuit in *A.H. Robins Co., Inc.,* 788 F.2d at 999–1000, holding a stay permissible under subsection (a)(1) based solely on the existence of an indem-

nification agreement"). Nevertheless, if the federal regulation invoked by C.H. Robinson creates a viable cause of action, it would, under the plaintiff's theory, create independent liability on the part of Midwest. Thus, whether C.H. Robinson is entitled to indemnification from Paris & Sons is irrelevant to C.H. Robinson's theory of recovery, because each defendant is alleged to be responsible for the charges. Plaintiff's Pet. ¶¶ 5, 9, Prayer.

### 5. *Summary*

In sum, the court concludes that the automatic stay under section 362(a)(1) of the Bankruptcy Code is not truly "automatic" when invoked against non-debtor codefendants. The party seeking to invoke an extension of the stay must affirmatively seek an order from the bankruptcy court, which has authority to extend the protections of 362(a) pursuant to its equity powers under section 105.[8] Paris & Sons did not request the bankruptcy court to utilize its section 362(a) authority, nor did any other party invoke the court's authority on this matter. The automatic stay provision of the Bankruptcy Code is designed to protect the debtor: "co-defendants and insurers are not the intended beneficiaries of the automatic stay granted to the ... debtor." *In re Titan Energy, Inc.,* 837 F.2d 325, 334 (8th Cir.1988) (citing *In re White Motor Credit Corp.,* 37 B.R. 631, 644 (N.D.Ohio 1984), *aff'd and remanded,* 761 F.2d 270 (6th Cir.1985)). Accordingly, C.H. Robinson's action against Midwest was not stayed during the pendency of Paris & Sons's bankruptcy. Moreover, even if the action against Midwest were automatically stayed without the necessity of a court order, "unusual circumstances" do not exist in this case which would have justified such an exten-

---

8. This case does not require the court to decide whether a non-debtor can move for an extension of the automatic stay; the court expresses no opinion as to whether a non-debtor party can, in fact, move for such an extension, or whether such a motion may only be made by the debtor.

sion, because C.H. Robinson's claim against Midwest is independent of any liability on the part of Paris & Sons.

### D. Calculation Of The Limitations Period

■ Therefore, the court will calculate the limitations period without suspending the time in which Paris & Sons's bankruptcy was pending. Five months ran before the claim was filed; thus, approximately thirteen months remained in the limitations period. C.H. Robinson's claim was dismissed by the United States District Court for the Northern District of Iowa on April 22, 1999 for want of prosecution.[9] C.H. Robinson did not refile its petition until April 13, 2001, nearly twenty-four months later. Consequently, nearly twenty-nine months had run before C.H. Robinson filed this claim in state court. Thus, C.H. Robinson's claim against Midwest is time-barred. *See* 49 U.S.C. § 14705(a) (eighteen month limitations period on claims to recover freight charges).

Furthermore, even if the automatic stay did apply to C.H. Robinson's action against Midwest, C.H. Robinson had a forum in which to litigate its claim when Midwest removed the action to federal court as a core proceeding pursuant to 28 U.S.C. § 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure. Having failed to take advantage of that forum, C.H. Robinson cannot now claim that it was barred from proceeding with its claim against Midwest as a result of the automatic stay.

■ Further, when a claim is involuntarily dismissed, it is treated as if it were never filed. *Cf. Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir.1992) (stating involuntary dismissal for lack of prosecution treated as with prejudice be-

cause "[i]f a Title VII complaint is timely filed pursuant to an EEOC right-to-sue letter and is later dismissed, the timely filing of the complaint does not toll the ninety-day limitations period"); *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir.1981) (dismissal for want of prosecution equivalent to with prejudice if dismissal has effect of preventing refiling because of statute of limitations); *Moore v. St. Louis Music Supply Co., Inc.*, 539 F.2d 1191, 1193–94 (8th Cir.1976) ("Dismissal without prejudice operates to leave the parties as if no action had been brought at all. Following such dismissal the statute of limitations is deemed not to have been suspended during the period in which the suit was pending.") (citing *Bomer v. Ribicoff*, 304 F.2d 427, 428–29 (6th Cir.1962), and *see Hall v. Kroger Baking Co.*, 520 F.2d 1204, 1205 (6th Cir.1975); *Cleveland v. Douglas Aircraft Co.*, 509 F.2d 1027, 1029–30 (9th Cir.1975)). Consequently, the limitations period continued running between the time the claim accrued and the filing. Strictly speaking, this would have meant that the limitations period ran in August of 1998.

Contrary to C.H. Robinson's contention, the automatic stay does not "toll" the running of the statute of limitations. Technically speaking, the Bankruptcy Code does not provide that a statute of limitations is tolled during the period of bankruptcy. *Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1153 (8th Cir.1999). Instead, "[i]t provides that the action must be commenced within thirty days after notice of the termination or expiration of the stay." *Id.* at 1153–54 (citing 11 U.S.C. § 108(c)(2)); *see also Hazen First State Bank v. Speight*, 888 F.2d 574 (8th Cir. 1989) (rejecting application of section

---

9. Under federal law, a dismissal for want of prosecution is deemed a judgment on the merits, thus having a preclusive effect on subsequent filings. RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1980) (adopting rule

of preclusion for want of prosecution dismissals). Because Midwest did not raise this argument, the court will not address whether this action was barred by *res judicata*.

108(c)(2) to private contract between the parties but recognizing "[w]here a creditor is stayed from commencing or continuing an action against a debtor in bankruptcy, section 108(c) gives the creditor an additional 30 days to enforce its claim against the debtor once the creditor receives notice of the termination of the stay."). Midwest did not advance its motion to dismiss on this ground, but it appears to the court that even if the stay encompassed C.H. Robinson's claim against Midwest and further assuming the logical extension of this argument that section 108(c)(2) also applies to any claims against a non-bankrupt codefendant to whom the stay applies, C.H. Robinson would have had thirty days after Paris & Sons's bankruptcy petition was dismissed to refile its claims, because the limitations period ran while the bankruptcy petition was pending. Consequently, C.H. Robinson would have had to have filed its petition within thirty days of May 16, 2000—or, in other words, by June 15, 2000.

### E. Indispensable Party

 C.H. Robinson attempts to save its claim by arguing that Paris & Sons was an indispensable party to its action against Midwest; therefore, C.H. Robinson contends it could not have proceeded without Paris & Sons's participation in the lawsuit. Its argument, however, merely reiterates its argument that the automatic stay exception should apply because "unusual circumstances" exist on account of the indemnification clause in the contract between Paris & Sons and Midwest. Paris & Sons cites no legal authority or explanation for its position. Furthermore, as explained above, it is clear from the face of C.H. Robinson's petition that the plaintiff's claim against Midwest is independent of its claim against Paris & Sons. Because Paris & Sons was not an indispensable party within the meaning of Federal Rule of Civil Procedure 19, this court will not address the effect this may have had on the running of the limitations period. *See generally Patterson v. State*, 880 P.2d 1038, 1043–44, 1044 n. 12 (Alaska 1994) (distinguishing between equitable tolling under Rule 19 and extension of automatic stay).

### III. JOINT MOTION TO CONTINUE OR SUSPEND DEADLINES, OR, IN THE ALTERNATIVE, FOR A SCHEDULING CONFERENCE

The parties' original Scheduling Order And Discovery Plan was approved on August 14, 2001. This Motion To Dismiss was filed on June 11, 2001. Senior District Court Judge Edward J. McManus issued an order recusing himself from this matter, and the case was reassigned to this court in October of 2001. On October 26, 2001, the parties' Joint Motion To Continue Or Suspend Deadlines apparently crossed in the mail with this court's Amended Scheduling Order (Doc. No. 14). Because the court will grant Midwest's Motion To Dismiss, the parties' joint motion will be denied as moot.

### IV. CONCLUSION

Because the court finds that the automatic stay provision of the Bankruptcy Code did not stay C.H. Robinson's action against Midwest during Paris & Sons's bankruptcy, the court **grants Midwest's Motion To Dismiss** on the ground the lawsuit is time-barred. Furthermore, even if the stay did extend automatically to bar further proceedings against Midwest, C.H. Robinson's failure to prosecute its claim and failure to timely refile after Paris & Sons's bankruptcy petition was dismissed resulted in the expiration of the limitations period. And finally, the court finds that the parties' **Joint Motion To Continue Or Suspend Deadlines is moot.**

**IT IS SO ORDERED.**