**In re NATIONAL CENTURY FINANCIAL ENTERPRISES, INC., an Ohio corporation, et al., Debtors.**

**No. 02–65235.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Aug. 20, 2003.

Charles M. Oellermann, Joseph M. Witalec, Jones, Day, Reavis & Pogue, Paul R. Brown, Columbus, OH, Ernest B. Williams, Nashville, TN, Jeff J. Marwil, John P. Sieger, Peter Young, Chicago, IL, Kathy D. Patrick, Sydney Ballesteros, Houston, TX, for Debtor.

Dean P. Wyman, Office of the U.S. Trustee, Cleveland, OH, for U.S. Trustee.

Sam J. Alberts, Washington, DC, Susan L. Rhiel, Columbus, OH, for Great Southeast Community Hospital Corp.

Amanda C. Ellis, Worcester, MA, for New England Home Therapies Inc.

Leon Friedberg, Columbus, OH, Nancy V. Alquist, Baltimore, MD, Tobey M. Daluz, Wilmington, DE, Vincent J. Marriott, Philadelphia, PA, for Official Unsecured Creditor Committee.

## ORDER ON MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR AN ORDER ENFORCING AUTOMATIC STAY AGAINST AMEDISYS, INC. AND CERTAIN OF ITS AFFILIATES

DONALD E. CALHOUN, JR., Bankruptcy Judge.

This matter came before the Court for hearing upon the Motion of Debtors and Debtors in Possession for an Order Enforcing Automatic Stay Against Amedisys, Inc. and Certain of Its Affiliates ("Motion"), Amedisys Entities' Brief in Opposition to Debtors' Motion for an Order Enforcing Automatic Stay ("Memo Contra"), and the Reply Brief of Debtors and Debtors in Possession Supporting an Order Enforcing Automatic Stay Against Amedisys, Inc. and Certain of Its Affiliates ("Reply").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Before getting to the legal analysis, a brief factual and procedural history is in order.

## I. FACTUAL AND PROCEDURAL HISTORY

On November 8, 2002, the Amedisys Entities commenced an action in the United States District Court, Southern District of Ohio, Eastern Division (Civ. No. C2 02 1105) against JP Morgan Chase Manhattan Bank ("Trustee"), NPF VI, NPFS, NCFE and Lance Poulsen.[1] Within the complaint, the Amedisys Entities demanded, *inter alia*, the turnover of $7.3 million which purportedly represented the proceeds of non-purchased accounts receivable (the "Ohio Action"). On November 18, 2002 (the "Petition Date"), all of the Debtors other than Allied Medical, Inc. ("Allied") commenced their respective re-

---

1. The Amedisys Entities are Amedisys, Inc.; Amedisys Home Health, Inc. of Alabama; Clinical Arts Home Care Services, Inc.; Central Home Health Care; Tugaloo Home Health Agency; North Georgia Home Health Agency; Coosa Valley Home Health; Amedisys Home Health Inc. of Louisiana; Amedisys Home Health, Inc. of North Carolina; Amedisys Home Health Inc. of Oklahoma; Amedisys Home Health Inc. of Tennessee; Amedisys Home Health Inc. of Virginia; Superior Home Health Care; Amedisys Northwest Home Health, Inc.; Northwest Home Health, Inc.; Amedisys Specialized Services, Inc.; Precision/Amedisys Specialized Medical Services; Amedisys Alternate–Site Infusion Therapy Services, Inc.; Home Health of Alexandria, Inc.; Cornerstone Home Health Quality Home, Inc.; PRN, Inc. d/b/a Amedisys Alternate–Site Infusion Therapy Services; Infusioncare Solutions, Inc. d/b/a Precision Health Systems; and Amedisys Surgery Centers, L.C.

organization cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On February 14, 2003, Allied commenced its Chapter 11 case. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly. The Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Debtors have represented to the Court that these cases will require a complex plan of liquidation.

On December 5, 2002, the United States Trustee (the "U.S. Trustee") appointed a statutory committee of unsecured creditors in these Chapter 11 cases (the "Creditors' Committee"), pursuant to Section 1102 of the Bankruptcy Code. On January 9, 2003, the U.S. Trustee appointed two official subcommittees. Those subcommittees are the Official Subcommittee of NPF VI Unsecured Creditors (the "NPF VI Subcommittee") and the Official Subcommittee of NPF XII Unsecured Creditors (the "NPF XII Subcommittee").

Debtor, National Century Financial Enterprises, Inc. ("NCFE") is an Ohio corporation. According to the schedules filed, NCFE is the direct or indirect parent of each of the other Debtors. It has been represented to the Court that prior to the Petition Date, the Debtors were one of the country's largest providers of healthcare accounts receivable financing.

According to representations made to the Court, the Debtors financed and serviced more than $15 billion in healthcare accounts receivable. The Debtors also provided other financing and leasing services to healthcare companies. The Debtors historically financed the purchase of eligible receivables primarily through private placement sales of bonds to institutional investors. All of the Debtors' outstanding bonds as of the NCFE Petition Date were issued by Debtors NPF VI, Inc. ("NPF VI") and NPF XII, Inc. ("NPF XII"). As of the NCFE Petition Date, it is reported that the aggregate outstanding principal amount of the bonds issued by NPF VI, the indenture trustee for which is The Chase Manhattan Bank n/k/a JP Morgan Chase & Co., was $924,995,000.00, and the aggregate outstanding principal amount of the bonds issued by NPF XII, the indenture trustee for which is Bank One, N.A. ("Bank One"), was $2,047,500,000.00. As of September 30, 2002, Debtors report that their books and records reflected approximately $3.8 billion in assets and approximately $3.6 billion in liabilities on a consolidated basis.

On or about December 19, 2002, the United States District Court for the Southern District of Ohio, Eastern Division, transferred the Ohio Action to this Court. That transferred case was assigned Adversary Proceeding No. 02–2576. On February 19, 2003, this Court held a status conference regarding the transferred case. On February 21, 2003, the Amedisys Entities filed their First Amended Complaint. The Defendants named in the First Amended Complaint were JP Morgan Chase Manhattan Bank, as Trustee, NPF VI, Inc., National Century Financial Enterprises, Inc., and National Premier Financial Services, Inc. However, the First Amended Complaint did remove JP Morgan as a defendant to certain causes of action.

### A. Relief Sought in Ohio Action

In Count One of the First Amended Complaint, the Amedisys Entities seek a declaratory judgment against all the Defendants. The Amedisys Entities seek entry of a declaratory judgment declaring the parties' respective rights and obli-

gations, including, *inter alia*, the parties' respective rights and obligations under the sale agreements, the Trust Agreement and related documents, and the parties' respective rights and obligations in connection with the funds in the possession or control of the Trustee for the NCFE entities (Adv. Pro. No. 02–2576, First Amended Complaint, p. 13).

In Count Two of the First Amended Complaint, the Amedisys Entities seek a declaration from this Court declaring that their cash in possession or control of the Trustee or the NCF entities—approximately $7.3 million—is an unjust enrichment to Defendants occurring by mistake or fraud. (Adv. Pro. No. 02–2576, First Amended Complaint, p. 14). In Count Three of the First Amended Complaint, The Amedisys Entities seek a turnover and return of Amedisys' funds in the amount of at least $7,337,569.00. (Adv. Pro. No. 02–2576, First Amended Complaint, p. 14).

In Count Four of the First Amended Complaint, the Amedisys Entities seek a determination that the NCFE entities have specifically breached the sale agreements by failing, *inter alia*, to timely and properly return funds to the Amedisys entities, failing to properly maintain the lock box accounts, failing to properly maintain a detailed accounting record of all deposits and withdrawals from the reserve accounts, and improperly allocating, distributing and commingling such funds. (Adv. Pro. No. 02–2576, First Amended Complaint, p. 15). In Count Five of the First Amended Complaint, the Amedisys Entities seek specific performance mandating that the NCFE entities remit not less than the $7,337,569.00 amount to the Amedisys entities. (Adv. Pro. No. 02–2576, First Amended Complaint, pp. 15–16). In Count Six of the First Amended Complaint, the Amedisys Entities request a judgment en-

try determining that the NCFE entities have breached their fiduciary duties by failing and refusing to take actions to ensure the distribution of funds to the Amedisys entities. (Adv. Pro. No. 02–2576, First Amended Complaint, p. 16).

In Count Seven of the First Amended Complaint, the Amedisys Entities seek a judgment determining that the NCFE entities made fraudulent and misleading representations upon which the Amedisys Entities relied. The allegations in Count Seven are against all Defendants, except the Trustee. (Adv. Pro. No. 02–2576, First Amended Complaint, pp. 16–17).

In Count Eight of the First Amended Complaint, the Amedisys Entities seek an order for accounting of books and records from all named Defendants. (Adv. Pro. No. 02–2576, First Amended Complaint, p. 17). In Count Nine of the First Amended Complaint, the Amedisys Entities seek an order removing NPFS as a servicer. The allegations in Count Nine only are against Defendant NPFS. (Adv. Pro. No. 02–2576, First Amended Complaint, p. 18). Finally, in Count Ten of the First Amended Complaint, the Amedisys Entities seek entry of an order determining that the diversion and pledging of certain funds resulted in an intentional conversion of funds that are property of Amedisys Entities, contrary to the sale agreements and trust agreement, for which, as a proximate and direct result, the Amedisys Entities have been irreparably harmed. The allegations in Count Ten are against all Defendants, except the Trustee. (Adv. Pro. No. 02–2576, First Amended Complaint, p. 18).

## B. *Relief Sought in Louisiana Action*

The First Amended Complaint, filed on February 21, 2003, removed JP Morgan as a defendant as to certain causes of action. On February 21, 2003, the Amedisys Entities also filed a complaint against JP Mor-

gan, Anthony Giordano, Marie Merritt, Craig Kantor, Thomas Mendell and Harold Pote (collectively, the "JP Morgan Defendants"), as well as fictitious defendants, ABC Insurance Company and XYZ Insurance Company, in the 19th Judicial District Court, Parish of East Baton Rouge in the State of Louisiana. Certain of the JP Morgan Defendants subsequently removed the action to the United States District Court for the Middle District of Louisiana ("Louisiana Action") on diversity grounds, pursuant to 28 U.S.C. §§ 1332 and 1442, and on the grounds that the lawsuit related to the Debtors' pending bankruptcy cases, pursuant to 28 U.S.C. §§ 1334 and 1452.

In the Louisiana Action, the Amedisys Entities assert the following causes of action: (a) specific performance of the NPF VI Indenture and the sales and subservicing agreement between the NCFE entities and Amedisys Entities ("SSA"), (b) breach of a third party beneficiary contract or stipulation *pour autrui* pursuant to Louisiana law, (c) breach of fiduciary duty, (d) fraud, (e) detrimental reliance, (f) wrongful conversion, (g) imposition of a constructive trust, (h) violations of the Louisiana Unfair Trade Practices Act and (i) unjust enrichment against the JP Morgan Defendants. (Motion, Exhibit A, Pleading No. 1358). The JP Morgan Defendants filed a motion in the Louisiana Court for the entry of an order: (a) transferring the Louisiana Action to the United States District Court for the Southern District of Ohio, for reference to this Court; (b) ruling that the automatic stay imposed as a result of the filing of these Chapter 11 cases stays the Louisiana Action; or (c) dismissing the Louisiana Action. On June 10, 2003, the Louisiana Court issued an order permitting discovery to go forward regarding the above motion. The Louisiana Court had not yet ruled on the transfer motion as of the hearing held in this Court.

### C. *Arguments of the Parties*

On June 23, 2003, Debtors filed their Motion and on July 14, 2003, the Amedisys Entities filed their Memo Contra. At the hearing, Debtors' counsel, counsel for JP Morgan Chase Bank, counsel for Provident Bank, and counsel for the NPF XII Subcommittee argued that this Court should enter an order declaring the filing of the Louisiana Action to be invalid as violative of the automatic stay. Counsel for Amedisys argued that the automatic stay does not apply to the Louisiana Action because the Louisiana defendants are not debtors in this bankruptcy case and the claims within the Louisiana action are not property of the Debtors' estates. In addition, counsel for Amedisys argued that laches and the doctrine of collateral estoppel prevent Debtors from enforcing the automatic stay against the Amedisys entities.

On July 23, 2003, Debtors filed their Reply. At the hearing, Counsel for the Amedisys Entities represented that he did not receive the Reply nor have a chance to review the case law cited within it. He requested an opportunity to brief the impact of *In re Morris*, 260 F.3d 654 (6th Cir.2001) upon *In re Omegas*, 16 F.3d 1443, 1451 (6th Cir.1994), a case cited in Debtors' Reply. The Court agreed to allow the parties to file supplemental briefs regarding *In re Morris* and the impact, if any, of the recent Second Circuit case of *Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency*, 318 F.3d 392 (2nd Cir.2003). On July 28, 2003, Debtors filed a Supplemental Authority in Support of the Motion to Enforce the Automatic Stay ("Debtors' Supplemental Brief"). On the same date, the Amedisys Entities filed a Sur Reply in Opposition to Debtors' and Debtors' In Possession Motion for an Order Enforcing Automatic Stay ("Amedisys' Supplemental Brief").

In Amedisys' Supplemental Brief, the Amedisys Entities offer and stipulate that they (1) will stay voluntarily, pending further order of this Court, the prosecution of Count I—Specific Performance, and Count VII—Constructive Trust in the Louisiana Action, and any claim against XYZ Insurance Company (i.e., any insurance carrier providing director and officer coverage for the directors and officers of Debtors) in the Louisiana Action; and (2) will not use any factual determination made in the course of the prosecution of the Louisiana Action to seek to collaterally estop the Debtors in litigation in this Court. The Amedisys Entities made no reference to *In re Morris* in their Supplemental Brief. Further, the Amedisys Entities made no reference to *Covanta Onondaga Ltd.* in their Supplemental Brief.

## II. *LEGAL ANALYSIS*

### A. *Statutory Provisions*

Section 362, in pertinent part, states as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

  (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

  (2) the enforcement . . . ;

  (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

Section 105(a), in pertinent part, states as follows:

(a) The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

### B. *Court Review*

■ Within the context of the various proceedings in this bankruptcy case, various parties have represented to the Court that this bankruptcy case represents and presents a variety of complex and complicated issues. Throughout the course of this case, those representations have been very accurate. Many of the motions and pleadings presented have revolved around very complex issues.

The parties to the matters before this Court are very well aware of the complicated issues involved. The Debtors and the Amedisys Entities have been involved in the "true sale" pleadings and hearings. The same parties have also been involved in Adversary Proceeding No. 02–2576 and in the Louisiana Action. The parties involved are not strangers to the various issues pending before this Court. The parties also are not strangers to the concept that this Court has continuously expressed an interest to not infringe or step upon the toes of any other bankruptcy court, state court, or district court. This

Court takes very seriously its duties and recognizes that other courts have certain duties regarding related issues. In making this decision, this Court has taken judicial notice of the various actions involving these same parties pending before it and of the actions taken in Louisiana.

Section 362(a)(1) operates as a stay to the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title. In this particular case, the Court finds that the Ohio Action was commenced pre-petition. That action was filed against the Debtors and JP Morgan. It eventually was transferred to this Court, and the same parties are still involved in said action, to some extent.

■ Further, the extension of the automatic stay pursuant to § 362(a) is appropriate when there is an automatic creation of liability against the debtor because of any judgment against a non-debtor co-defendant. *See, C.H. Robinson Company v. Paris & Sons,* 180 F.Supp.2d 1002, 1017 (N.D.Iowa 2001). In reviewing Counts One, Two, Three, Five, Six, Seven, Eight, and Nine of the Louisiana Action, the Court finds that they seek a determination that the funds in the bank account at JP Morgan are property of the Amedisys Entities and are not property of the Debtors. In further reviewing Count Four and Count Ten of the Louisiana Action, the Court finds that the Amedisys Entities seek judgment against Debtors' former directors. The Louisiana Action also names Debtors' insurance carrier(s) so that it/ they might provide coverage for the actions and omissions of the Debtors. All of the foregoing actions require a determination of ownership of funds alleged to be Debtors' funds. These allegations in substance seek relief against the Debtors.

Further, the Court finds that the Amedisys Entities are part of the true sale litigation pending in this Court and the Louisiana Action. The Amedisys Entities are also plaintiffs in the Ohio Action pending before this Court and the Louisiana Action. In effect, the Debtors, the Amedisys Entities, and JP Morgan Chase are involved in all three actions. Based upon the foregoing, the Court finds that the involvement in the Louisiana Action effectively will act to diminish this bankruptcy estate by causing a duplication of efforts and a waste of judicial time and resources.

Based upon its review, the Court finds that said Louisiana Action should be globally stayed because the determination of claims against JP Morgan will also require a determination of the ownership of the funds in the Debtors' bank accounts. The Court also concludes that the automatic stay shall be enforced against Amedisys, Inc. and its affiliates relating to the Louisiana Action. However, due to the continued involvement of all of the parties in all of the actions and the relationship of discovery proceedings in those actions, the Court is reluctant to issue an award of attorneys' fees and costs pursuant to Section 105(a) of the Bankruptcy Code.

Based upon the foregoing, the Amedisys Entities shall immediately cease and desist from any further prosecution of the Louisiana Action, absent further order of this Court. Any further prosecution of the Louisiana Action by the Amedisys Entities shall constitute contempt of this Court. The automatic stay shall be enforced against Amedisys, Inc. and its affiliates relating to the Louisiana Action.

IT IS SO ORDERED.